Conklin **WALLACE**,
Petitioner-Appellant,

v.

Robert **CHRISTENSEN**,
Respondent-Appellee.

No. 85–5560.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted En Banc
June 17, 1986.

Decided Oct. 23, 1986.

Noel M. Ragsdale, William J. Genego, Post-Conviction Justice Project, Los Angeles, Cal., for petitioner-appellant.

Janet Goldstein, Asst. U.S. Atty., Major Frauds Unit, Los Angeles, Cal., for respondent-appellee.

Before BROWNING, GOODWIN, ANDERSON, TANG, FARRIS, POOLE, CANBY, REINHARDT, HALL, KOZINSKI and THOMPSON, Circuit Judges.

THOMPSON, Circuit Judge:

Appellant-petitioner Conklin Wallace appeals from the district court's denial of his petition for a writ of habeas corpus challenging the action of the United States Parole Commission (the "Commission") in setting his presumptive parole date. Wallace contends that the Commission's application of the 1983 Parole Guidelines (the "Guidelines") to his parole determination violated the *ex post facto* clause of the Constitution, art. 1 § 9, cl. 3. He also argues the Commission abused its discretion and was arbitrary and capricious in determining his "offense behavior" rating for parole purposes. We affirm.

## I

### FACTS AND PROCEEDINGS

In November 1982 a jury found Wallace guilty of extortion (18 U.S.C. § 1951), use of an explosive to commit a felony (18 U.S.C. § 844(h)), and possession of an unregistered destructive device (26 U.S.C. § 5861(d)). Wallace and his brother (the "defendants") had attempted to extort $400,000 by making a bomb threat via telephone to American Airlines ground personnel at Los Angeles International Airport. The defendants stated that a bomb had been placed in a suitcase which was located in the luggage loading area for an American Airlines flight scheduled to depart later that day. They provided a description of the location of the suitcase, and told officials that they would reveal the location of two other bombs after the airline paid them $400,000. Security officers subsequently removed the bomb from the loading area. The bomb contained explosives. Although the bomb was not completely wired and, therefore, not operational, it could have been set off by radio transmissions at the airport.

On January 6, 1983 Wallace was sentenced to fifteen years imprisonment under 18 U.S.C. § 4205(b)(2). A copy of Wallace's sentence and prior record was forwarded to the Western Region, United States Parole Commission (the "regional commission") for a parole evaluation. His first parole hearing was held in November 1983.

Between the time Wallace was sentenced and his first parole hearing, the Commission revised the Parole Commission Offense Behavior Severity Index portion of the Guidelines. 28 C.F.R. § 2.20. Adopted on an experimental basis in 1972 and promulgated pursuant to the Parole Commission and Reorganization Act of 1976, Pub.L. No. 94–233, 90 Stat. 219–231 (1976) (codified at 18 U.S.C. §§ 4201–18) [the "Parole Act" or "Act"], the Guidelines take the form of a "grid" or "matrix" for the setting of presumptive parole dates. On the vertical side, the prisoner is given an "offense behavior" rating from category one through

eight ("low severity" to "Greatest II severity") based upon the type of offense committed and the characteristics of the offense in that particular case (i.e., use of force, value of items stolen, if any). The 1983 revision added to the "offense behavior" categories a category seven "Interference with a Flight Crew." 28 C.F.R. § 2.20 (242)(a). On the horizontal side, the prisoner is given a "salient factor" score ranging from "poor" to "very good" based upon such factors as prior convictions, parole violations and escapes, age, and drug dependence. 28 C.F.R. § 2.20, at 101; *United States Parole Commission Rules and Procedures Manual*, 61–66 (1983). The "offense behavior" rating and "salient factor" score are then correlated to arrive at a presumptive parole range.

Applying the 1983 Guidelines, as amended, and after notice and hearing, the regional commission classified Wallace's "offense behavior" as "Interference with a Flight Crew" explaining:

> This offense certainly had the potential to cause injury or death and destruction of aircraft. At least one bomb was placed in luggage about to be placed on flight 75 to San Diego and allegedly two other bombs were to have been placed on two other flights. Certainly the explosive device which was found in luggage as described by the call to the FBI which was destined for flight 75 had the potential to cause death or serious injury to innocent bystanders and certainly to those law enforcement personnel charged with disarming the device.

The regional commission gave Wallace a "salient factor" score of "good." The "offense behavior" rating of seven, when correlated with a "salient factor" score of "good," gave Wallace a presumptive parole range of sixty-four to ninety-two months. The regional commission set a presumptive parole date of seventy-eight months.

Wallace filed an appeal with the full Commission alleging that application to his case of the 1983 Guidelines, as amended, violated the *ex post facto* clause of the United States Constitution. He contended that had the Guidelines been applied at the time he was committed and began serving his sentence, the only offense classification then applicable would have been "Extortion." Wallace argued he would have received an "offense behavior" rating of "five" instead of the "seven" applied by the regional commission under the amended Guidelines for "Interference with a Flight Crew." Wallace also argued that the regional commission's calculation of his "offense behavior" as "seven" was arbitrary, capricious, and an abuse of discretion.

The full Commission denied Wallace's appeal, finding:

> *Reasons:* In response to your claim that your offense severity has [been incorrectly] rated as Category Seven, this claim is without merit. Your conduct had the potential for creating a significant safety risk to an aircraft or passengers and has been correctly placed in the Category Seven rating.

> It is the Commission's policy that the ex post facto clause does not apply to paroling policy guidelines.

In July 1984 Wallace filed the present habeas corpus petition in the district court realleging the claims made before the full Commission. The district court denied the petition and Wallace appealed.

## II

## JURISDICTION

A. *Review of Commission's Decisions Under 18 U.S.C. § 4203(b)*

We first consider our jurisdiction to review decisions made by the Commission acting under the authority granted by 18 U.S.C. § 4203(b)(1), (2), (3).[1] This provision

---

1. Section 4203(b) provides, in part:

   (b) The Commission, by majority vote, and pursuant to the procedures set out in this chapter, shall have the power to—

   (1) grant or deny an application or recommendation to parole any eligible prisoner;
   (2) impose reasonable conditions on an order granting parole;

of the Parole Act empowers the Commission, by majority vote and under proper procedures, to grant, deny, modify or revoke, or impose reasonable conditions upon (hereinafter "grant or deny") parole. Wallace argues that our jurisdiction to review these decisions is plenary and extends to a claim that the Commission abused its discretion in determining an "offense behavior" rating and a "salient factor" score. The government responds that our jurisdiction to review any decision of the Commission is limited to claims that the Commission violated the Constitution, a statute, or a regulatory command.

Previous cases in this circuit have referred to an "abuse of discretion" standard as the basis for review of Commission decisions, and have implicitly assumed the existence of jurisdiction to conduct that analysis. *See, e.g., Tatum v. Christensen,* 786 F.2d 959, 963 (9th Cir.1986); *Torres-Macias v. United States Parole Commission,* 730 F.2d 1214, 1216 (9th Cir.1984); *Roth v. United States Parole Commission,* 724 F.2d 836, 839–40 (9th Cir.1984); *Williams v. United States Parole Commission,* 707 F.2d 1060, 1063–64 (9th Cir. 1983); *Hatton v. Keohane,* 693 F.2d 88, 90 (9th Cir.1982); *O'Brien v. Putman,* 591 F.2d 53, 55 (9th Cir.1979). We took this case en banc to reconsider this assumption and evaluate our standard of review.

## 1. *Preliminary Overview*

We begin our analysis by acknowledging an enduring principle of federal jurisdiction. The federal courts, both primary and appellate, were created and remain courts of limited jurisdiction. *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 374, 98 S.Ct. 2396, 2402, 57 L.Ed.2d 274 (1978); *Sheldon v. Sill,* 49 U.S. 441, 445–46, 12 L.Ed. 1147 (8 How. 1850); *Jones v. Giles,* 741 F.2d 245, 248 (9th Cir.1984). In each case, the threshold question of jurisdiction must be addressed and answered before the merits may be reached and resolved. *See, e.g., id.* That we have assumed the existence of jurisdiction to re-

view an agency's determinations on previous occasions does not end our present analysis. Our task is to examine the relevant statutory framework, specific review provisions, and congressional intent to determine whether we may review an agency's decisions. *See, e.g., Johnson v. Robison,* 415 U.S. 361, 366–74, 94 S.Ct. 1160, 1165–69, 39 L.Ed.2d 389 (1974) (examining these factors involving decisions by Veterans' Administration); *Abbott Laboratories v. Gardner,* 387 U.S. 136, 139–41, 87 S.Ct. 1507, 1510–11, 18 L.Ed.2d 681 (1967) (same, decisions under Food, Drug & Cosmetic Act); *Garcia v. Neagle,* 660 F.2d 983, 987–88 (4th Cir.1981), *cert. denied,* 454 U.S. 1153, 102 S.Ct. 1023, 71 L.Ed.2d 309 (1982) (same, Parole Act).

We bring an important presumption to this inquiry. Established principles of separation-of-powers counsel against loosely inferring a congressional intent to preclude judicial review of administrative decisions. *See, e.g., Bowen v. Michigan Academy of Family Physicians,* — U.S. ——, 106 S.Ct. 2133, 2135–36, 90 L.Ed.2d 623 (1986); *Abbott Laboratories,* 387 U.S. at 140, 87 S.Ct. at 1511. *See also Barlow v. Collins,* 397 U.S. 159, 165–66, 90 S.Ct. 832, 836–37, 25 L.Ed.2d 192 (1970); Sunstein, *Reviewing Agency Inaction After Heckler v. Chaney,* 52 U.Chi.L.Rev. 653, 678–79 (1985). Judicial review, therefore, is presumed unless the statute precludes review or the action is "committed ... entirely to administrative discretion." *Barlow,* 397 U.S. at 165, 90 S.Ct. at 837 (discussing 5 U.S.C. § 701(a)(2)); *Morris v. Gressette,* 432 U.S. 491, 500–01, 97 S.Ct. 2411, 2418–19, 53 L.Ed.2d 506 (1977). Conversely, we may not review an agency decision "to the extent that ... statutes preclude judicial review ... [or] agency action is committed to agency discretion by law." *Heckler v. Chaney,* 470 U.S. 821, 105 S.Ct. 1649, 1654, 84 L.Ed.2d 714 (1985) (*quoting* 5 U.S.C. § 701(a)(1), (2)); *see also Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971); *Barlow,* 397 U.S. at 165, 90

(3) modify or revoke an order paroling          any eligible prisoner....

S.Ct. at 836.[2] We have recently stated that where agency action is committed by law to agency discretion, a court has no jurisdiction to review for abuse of discretion the informed judgments of administrative officials. *Abdelhamid v. Ilchert,* 774 F.2d 1447, 1450 (9th Cir.1985) (*citing Strickland v. Morton,* 519 F.2d 467, 470 (9th Cir.1975), and other authorities).

With these general principles in mind, we turn to a consideration of the statutory scheme of the Parole Act, the review provisions, and congressional intent.

### 2. *Statutory Scheme*

The Parole Act of 1976 was the product of nearly a decade of study and evaluation by the executive and legislative branches. S.Rep. No. 94–369, 94th Cong., 2d Sess. 1, 16, *reprinted in* 1976 U.S.Code Cong. & Ad.News 335, 338 [hereinafter *Senate Report*]. The principal elements of the legislation were the establishment of: (a) a Parole Commission to grant or deny parole and promulgate guidelines; (b) formalized procedures governing parole dispositions to assure fairness and uniformity; and (c) an administrative appeals process to expedite dispositions. *Id.* at 14–15, *reprinted in* 1976 U.S.Code Cong. & Ad.News 336–37.

The drafters of the Act stated: "It [was] not the purpose of this legislation to either encourage or discourage the parole of any prisoner.... Rather, the purpose [was] to assure ... that parole decisions are openly reached by a fair and reasonable process after due consideration has been given to the salient information." *Joint House-Senate Conference Report* No. 94–838, 94th Cong. 2d Sess. 19, 20, *reprinted in* 1976 U.S.Code Cong. & Ad.News 351, 353 [hereinafter *Joint Report*]. Although Congress recognized that a prisoner is not entitled to parole as a matter of right, it sought to establish a system of parole that would "[have] both the fact and appearance of fairness to all." *Senate Report, supra* at 19, *reprinted in* 1976 U.S.Code Cong. & Ad.News at 340. *See also* 121 Cong.Rec. 15705 (1975) (statement of Rep. Drinan) ("Is there a right to parole? Is this a qualified right? I would say no to both of those questions.... Parole is the implementation of a correctional policy and if a prisoner abides by the rules of the prison, and that is the given condition, then he has a right to due process.").

To achieve these objectives, Congress established a general procedural and substantive framework within which parole deci-

---

**2.** Section 701(a) of the Administrative Procedure Act ("APA") provides:

Application; definitions

(a) This chapter applies, according to the provisions thereof, except to the extent that—

(1) statutes preclude judicial review; or

(2) agency action is committed to agency discretion by law.

In *Heckler v. Chaney,* the Court explained the relationship between subsections (a)(1) and (a)(2) of section 701 of the APA:

The former applies when Congress has expressed an intent to preclude judicial review. The latter applies in different circumstances; even where Congress has not affirmatively precluded review, review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion. In such a case, the statute ('law') can be taken to have 'committed' the decisionmaking to the agency's judgment absolutely. This construction avoids conflict with the 'abuse of discretion' standard of review in § 706—if no judicially manageable standards are available for judging how and when an agency should exercise its discretion then it is impossible to evaluate agency action for 'abuse of discretion.' In addition, this construction satisfies the principle of statutory construction mentioned earlier, by identifying a separate class of cases to which § 701(a)(2) applies.

*Id.,* 105 S.Ct. at 1655. The Court discussed subsections (a)(1) and (a)(2) of section 701 in *Citizens to Preserve Overton Park,* 401 U.S. at 410, 91 S.Ct. at 820. By clarifying and reaffirming *Overton Park,* the Court in *Chaney* resolved the long-standing uncertainty and dispute over the proper interpretation of these two subsections. *See, e.g.,* Berger *Administrative Arbitrariness: A Synthesis,* 78 Yale L.J. 965 (1969); Saferstein *Nonreviewability: A Functional Analysis of "Committed to Agency Discretion,"* 82 Harv.L.Rev. 367 (1968); Davis *Administrative Arbitrariness Is Not Always Reviewable,* 51 Minn.L.Rev. 643 (1967). The Court, however, did leave several questions unanswered. *See Chaney,* 105 S.Ct. at 1659–60 (Brennan, J. concurring); Sunstein, *supra* at 675–83.

sions would be made. *See, e.g.,* 18 U.S.C. §§ 4208 (procedures governing parole hearing), and 4215 (administrative appeal provisions). Section 4205(a) of the Act requires the Commission to consider parole when a prisoner has served one-third of his or her sentence. *Id.* § 4205(a); 28 C.F.R. § 2.53(a). *See also Garcia,* 660 F.2d at 991. In making parole determinations, the Commission must consider certain information, if available and relevant, including reports and recommendations by staff, physical and mental examinations, and statements by victims. 18 U.S.C. § 4207; 28 C.F.R. § 2.19 (1983). The Commission must also consider the "nature and circumstances of the offense" and the "history and characteristics of the prisoner," 18 U.S.C. § 4206(a), and take into account whether release would "depreciate the seriousness of [the] offense," "promote disrespect for the law," or "jeopardize the public welfare." *Id.* §§ 4206(a)(1), (2).

Section 4203(a)(1) of the Act requires that the Commission "promulgate rules and regulations establishing guidelines for the powers enumerated in [section 4203(b)]." *Id.* § 4203(a)(1). Although Congress recognized that parole decisions often involve "subjective judgment[s]," *Senate Report, supra* at 16, *reprinted in* 1976 U.S.Code Cong. & Ad.News at 337,[3] it sought to reduce the disparity among similarly situated prisoners and provide fairer and more predictable parole determinations. *Id.* at 18, *reprinted in* 1976 U.S. Code Cong. & Ad.News at 340. *See Kills Crow v. United States,* 555 F.2d 183, 186 (8th Cir.1977); 61 A.L.R.Fed. 135, 146–48, § 3 (1983 & Supp.1985) (citing authorities). As evidence of Congress's intent to promote more uniform parole dispositions, sec-

tion 4206(c) of the Act provides that the "Commission may grant or deny release on parole notwithstanding the guidelines referred to in subsection (a) of this section if it determines there is good cause for so doing...." 18 U.S.C. § 4206(c). Commenting on this section, Senator Burdick stated: "Although exceptions to these guidelines would be permitted when the Parole Commission can establish reason that warrants it, it is anticipated that most decisions to grant or deny parole will be based on guidelines." 122 Cong.Rec. 4861 (1976) (statement of Sen. Burdick). Congress intended that "good cause" to deviate from the Guidelines would include "only those grounds put forward by the Commission in good faith and which are not arbitrary, irrational, unreasonable, irrelevant or capricious." *Joint Report, supra,* at 27, *reprinted in* 1976 U.S.Code Cong. & Ad.News at 359.

### 3. *Review Provisions*

■ As part of the foregoing statutory framework, section 4218 of the Parole Act contains provisions governing the availability of judicial review. 18 U.S.C. § 4218. Section 4218(c) of the Act provides that actions of the Commission in promulgating the Guidelines, which are *procedural* in nature, are "reviewable in accordance with the provisions of sections 701 through 706 of title Five, United States Code." *Id.* § 4218(c); *Joint Report, supra* at 36, *reprinted in* 1976 U.S.Code Cong. & Ad. News at 368 (*citing Pickus v. United States Board of Parole,* 507 F.2d 1107 (D.C.Cir.1974)). *See* 5 U.S.C. § 553 (establishing procedures governing enactment of agency rules). Section 4218(d) of the Act, however, provides that decisions of the

---

**3.** The Joint Report also recognized the subjective nature of parole determinations:

There is no body of competent empirical knowledge upon which parole decision-makers can rely, yet it is important for the parole process to achieve an aura of fairness by basing determinations of just punishment on comparable periods of incarceration for similar offenses committed under similar circumstances. The parole decision-makers must weigh the concepts of gen-

eral and special deterrence, retribution and punishment, all of which are matters of judgment, and come up with determinations of what is meant by 'would not depreciate the seriousness of his offense or promote disrespect for the law' that, to the extent possible, are not inconsistent with the findings in other parole decisions.

*Joint Report, supra* at 26, *reprinted in* 1976 U.S. Code Cong. & Ad.News at 358.

Commission in granting, denying, conditioning, modifying or revoking parole under section 4203(b)(1), (2), (3), which are *substantive* in nature, are committed to the discretion of the Commission and are not reviewable under 5 U.S.C. § 701(a)(2).

By these provisions, Congress has specifically rebutted the presumption of reviewability of the Commission's substantive decisions to grant or deny parole, and, therefore, these decisions may not be reviewed even for abuse of discretion. *See Farkas v. United States*, 744 F.2d 37, 38–39 (6th Cir.1984) ("substantive decisions" of Commission unreviewable); *Garafola v. Wilkinson*, 721 F.2d 420, 423–24 & n. 6 (3rd Cir.1983) ("Congress has committed substantive parole determinations to the absolute discretion of the Parole Commission."), *cert. denied*, 466 U.S. 905, 104 S.Ct. 1681, 80 L.Ed.2d 155 (1984); *Garcia*, 660 F.2d at 988–89 (court has no jurisdiction to review agency action where "the challenge is only to the decision itself"). *See also United States v. Addonizio*, 442 U.S. 178, 188–89, 99 S.Ct. 2235, 2242, 60 L.Ed.2d 805 (1979) (decision to release committed to discretion); *Portley v. Grossman*, 444 U.S. 1311, 1312, 100 S.Ct. 714, 714, 62 L.Ed.2d 723 (1980) (one Justice order per Justice Rehnquist) (noting that power to grant or deny parole has been committed to the discretion of Commission by section 4218 in passing on *ex post facto* question); *Luther v. Molina*, 627 F.2d 71, 75–76 (7th Cir.1980) (power to modify or revoke probation under section 4203(b)(3) is committed to agency discretion).

### 4. *Legislative History*

The legislative history of the Parole Act further evidences Congress's intent to exempt from judicial review substantive decisions to grant or deny parole. Although Congress was concerned that individual parole decisions be both fair and uniform, it also recognized the imprecise nature of many parole determinations. *Joint Report, supra* at 26, *reprinted in* 1976 U.S. Code Cong. & Ad.News at 358. Several members of the House of Representatives expressed concern that promulgation of the Guidelines would cause an increase in litigation in the district courts:

> The other thing that disturbs me about this bill, and there is not anything in this bill that would say there is any right of judicial review when a parole is denied, but once we write into the law even a qualified right of an individual for certain relief, I cannot see how we can avoid giving a prisoner the opportunity to test the denial of that relief in the courts, and I am very apprehensive that the U.S. district courts will begin to receive a great many petitions based upon the proposition that the Parole Board did not fulfill the requirements of the statute in denying the parole of the petitioner.

121 Cong.Rec. 15704 (1975) (statement of Rep. Hutchinson); *see also id.* at 15709 (statement of Rep. Kindness).

In explaining the exclusion of the Commission's decisions under section 4203(b) from the review provisions of the APA, the Joint Report stated:

> It is the intent of the Conferees that Commission decisions involving the grant, denial, modification or revocation of parole shall be considered actions committed to agency discretion for the purpose of section 701(a)(2) of title Five, United States Code. It is the Conferees understanding that the exclusion of such decisions from the judicial review provisions of Chapter Seven of title Five, United States Code, reflects the present law with respect to the *limitations on judicial review of individual parole decisions.*

*Joint Report, supra* at 36, *reprinted in* 1976 U.S.Code Cong. & Ad.News at 368 (emphasis added).

Congressman Drinan, a floor manager of the Parole Act, reiterated Congress's intent on the House floor:

> While actions of the Commission which violate sections 552, 552a, 553, and other sections of the APA not expressly exempted by H.R. 5727 are subject to judicial review, other practices are not covered by the review sections of the APA.

Subsection (d) of section 4218 of the bill excludes individual parole decisions from judicial review under the Administrative Procedures Act. Because of the unique nature of the work of the Parole Commission, the bill, as reported by both the House and Senate, exempted such decisions from review in the courts under the APA.

122 Cong.Rec. 5164 (1976) (statement of Rep. Drinan).

Hence, the legislative history of the Act substantiates our conclusion that Congress intended to exempt from judicial review the Commission's substantive decisions to grant or deny parole and that these decisions, therefore, are unreviewable even for abuse of discretion. *Garcia*, 660 F.2d at 988 & n. 5 (discussing legislative history).

### B. *Scope of Discretion*

■ This conclusion alone, however, does not end our jurisdictional inquiry. The Commission's decisions to grant or deny parole are not rendered in a vacuum or made without reference to standards. Rather, each substantive parole decision is the product of a carefully delineated process established by Congress and implemented by the Commission. Congress has directed that the Commission establish Guidelines and make parole determinations on the basis of these Guidelines except for "good cause." 18 U.S.C. §§ 4203(a)(1), 4206(c). As noted, the Guidelines prescribe the method by which the Commission calculates the "salient factor" score and the "offense behavior" rating. 28 C.F.R. § 2.20. The Commission has declared that its regional commissions may deviate from the presumptive parole range of the Guidelines "[w]here circumstances warrant," 28 C.F.R. §§ 2.20(c); *see also id.* § 2.21(c), but consistent with congressional mandate, the Commission must provide a statement of reasons for such deviation. *See, e.g.,* 18 U.S.C. § 4206(c); 28 C.F.R. §§ 2.20(d), (e), 2.26(e). The Commission's substantive decisions to grant or deny parole under section 4203(b), therefore, are rendered only *after* it has evaluated the relevant factors,

interpreted and applied the Guidelines, determined whether to deviate from them, and established a presumptive parole date. *See Addonizio*, 442 U.S. at 188, 99 S.Ct. at 2242 ("The decision as to when a lawfully sentenced defendant shall actually be released has been committed by Congress, *with certain limitations*, to the discretion of the Parole Commission") (emphasis added).

To recognize, as we must, that the Commission's substantive decisions to grant or deny parole are unreviewable does not necessarily answer whether the Commission's interpretation and application of the Guidelines are also shielded from review. *See, e.g., Garcia*, 660 F.2d 988–90 (recognizing that decision to grant or deny parole is unreviewable but then considering whether application of the Guidelines is subject to review); *Dye v. United States Parole Commission*, 558 F.2d 1376, 1378 (10th Cir.1977) (same); *Brown v. Lundgren*, 528 F.2d 1050, 1054–55 (5th Cir.) (same), *cert. denied*, 429 U.S. 917, 97 S.Ct. 308, 50 L.Ed.2d 283 (1976). We must still determine whether and to what extent the removal of our jurisdiction to review the Commission's *decisions* to grant or deny parole also precludes our review of the Commission's decision-making *processes*. We recognize that framing the issue in this manner tends to invite an "all or nothing response." That is, one might be tempted to reply that a court may either review *all* of the Commission's interpretations and applications of the Guidelines or it may review *none* of these processes. We believe the proper answer lies somewhere in between. Before rendering our view on this issue, however, and perhaps as a means of doing so, we think it will prove helpful to consider the two "all or nothing" positions.

### 1. *The No Review Position*

The first view is that we may not review any aspect of the Commission's decision-making processes. According to this view, Congress has committed to agency discretion all action taken by the Commission "pursuant" to its power to grant or deny

parole. 18 U.S.C. § 4218(d). The Commission's interpretation of the Guidelines is an element of the ultimate decision to grant or deny parole. Since the court has no power to review the Commission's ultimate parole decision, therefore, it has no power to review the process by which the Commission reaches that decision.

While this argument has a certain syllogistic appeal based on a mathematical hypothesis that the greater includes the lesser, this axiom is not necessarily logical or compelling when applied to the question of jurisdiction under the Parole Act. In construing a statute, we begin with the language employed by Congress. *United States v. James,* — U.S. —, 106 S.Ct. 3116, 3121, 92 L.Ed.2d 483 (1986); *Vance v. Hegstrom,* 793 F.2d 1018, 1023 (9th Cir. 1986). The language of the Act indicates that Congress has limited the scope of discretion granted the Commission. Under section 4206 of the Act the Commission may deviate from the Guidelines, but only for "good cause." 18 U.S.C. § 4206(c). *See also* 122 Cong.Rec. 4861 (1976) (statement of Sen. Burdick) *(quoted supra).* The Commission must also consider certain information and factors in rendering parole determinations. 18 U.S.C. §§ 4206(a)(1), (2), 4207(1), (2), (3), (4), (5). The language of the Parole Act reveals no congressional design to allow the Commission to transgress these limitations. *See Farkas,* 744 F.2d at 39 (court may consider claim that Guidelines violate statute); *Garafola,* 721 F.2d at 424 (same); *Garcia,* 660 F.2d at 988 (court may consider whether Guidelines "as promulgated and applied, violate the intent

and directives of the Parole Act").[4] We must therefore reject the view that Congress has placed no limits on the scope of discretion granted the Commission, or that the Commission's decision-making processes are completely shielded from judicial review.

The legislative history of the Act reinforces these conclusions. *See Michigan Academy,* 106 S.Ct. at 2139–40 (examining legislative history to analyze certain statutory provisions of Medicare Act, notwithstanding that Congress excluded certain aspects of Medicare decisions from review). By excluding decisions under section 4203(b) from the review provisions of the APA, Congress did *not* intend to modify then existing case law on the limitations on judicial review of parole decisions. *See, e.g., Joint Report, supra* at 36, *reprinted in* 1976 U.S.Code Cong. & Ad.News at 368 *(quoted supra* in full; section 4218 "reflects the present law with respect to limitations on judicial review of individual parole decisions"); *id.* at 21, *reprinted in* 1976 U.S.Code Cong. & Ad.News at 353 ("The legislation provides a new statement of criteria for parole determinations, which are within the discretion of the agency, but *reaffirms existing case law* as to judicial review of individual case decisions.") (emphasis added). *See also Luther,* 627 F.2d at 75 & n. 5. At the time the full House and Senate considered the passage of the Act, Senator Burdick stated:

> The legislation provides for judicial review of the Commission's rulemaking procedure, but also carefully preserves

---

**4.** Section 4218(d) of the Parole Act, which limits review, does not cross-reference to the limitations established in sections 4206 and 4207. Rather, it references to section 4203(b)(1), (2) and (3); subsection (b) authorizes the Commission "pursuant to the procedures set out in this chapter" to grant or deny parole. 18 U.S.C. § 4203(b). The Act does not authorize the Commission to bypass sections 4206 and 4207, or preclude judicial review of violations of these provisions. We may therefore review whether the Commission has violated these provisions. *See* cases cited in text accompanying this note. *See also Assiniboine and Sioux*

*Tribes v. Board of Oil and Gas Conservation,* 792 F.2d 782, 791–92 (9th Cir.1986); (court may review agency violations of statute, notwithstanding that certain decisions may be committed to discretion); *Abdelhamid,* 774 F.2d at 1450 (same); *Scanwell Laboratories, Inc. v. Schaffer,* 424 F.2d 859, 874 (D.C.Cir. 1970) (same). *See Michigan Academy,* 106 S.Ct. at 2136 ("'only upon a showing of "clear and convincing evidence" of a contrary legislative intent should the courts restrict access to judicial review;'" *(quoting Rusk v. Cort,* 369 U.S. 367, 379–80, 82 S.Ct. 787, 794, 7 L.Ed.2d 809 (1962)).

existing limitations on judicial review of individual parole decisions.

122 Cong.Rec. 4862 (1976) (statement of Sen. Burdick).

Representative Drinan echoed this understanding:

It should be kept in mind however, that the conferees do not intend to preclude review under provisions of law other than the APA. It may be, for example, that a petition for a writ of habeas corpus might lie for certain allegedly unlawful acts of the Commission even if they involve individual parole decisions. But that is a matter left to the courts and this bill expresses no opinion, one way or the other in that regard.

In short, the bill which emerged from the conference did not alter to any significant degree the applicability of the APA to the acts and practices of the Parole Commission. And those provisions as contained in this bill, recognizing to a limited degree the peculiar nature of the parole process, are fair and equitable.

122 Cong.Rec. 5164 (1976) (statement of Rep. Drinan).

The decisions among the various circuits at the time Congress passed the Parole Act, and Congress's perception of this case law, is thus crucial to understanding the Commission's discretion under section 4218(d). The courts at the time of the Act were not entirely unanimous on the issue of review of parole determinations by the (then) Parole Board. Several courts had held that these decisions, and the Board's decision-making processes, were unreviewable. *See, e.g., Pickus,* 507 F.2d at 1113;

*Tarlton v. Clark,* 441 F.2d 384, 385 (5th Cir.), *cert. denied,* 403 U.S. 934, 91 S.Ct. 2263, 29 L.Ed.2d 713 (1971); *Thompkins v. United States Board of Parole,* 427 F.2d 222–23 (5th Cir.1970). Other courts had stated that these decisions were reviewable for abuse of discretion. *Dye,* 558 F.2d at 1378 (recognizing commitment to discretion but reviewing decisions for abuse of discretion); *Billiteri v. United States Board of Parole,* 541 F.2d 938, 944 (2nd Cir.1976) (citing authorities).[5] Nearly all of the circuits, however, agreed that the decisions of the Parole Board were committed to discretion, and that the Board's decisions (and interpretation of the Guidelines) could not be so "arbitrary" or "capricious" as to violate the Constitution. *See id.* (and cases cited *supra*). *See also Brown,* 528 F.2d at 1054; *Calabro,* 525 F.2d at 661.

At the time Congress considered the House version of the Parole Act, Congressman Wiggins (now our colleague on this court) expressed his understanding of these cases in language that we find significant:

Mr. Chairman, I would like to make a few additional observations with respect to judicial review. As I have indicated, the bill neither adds to nor subtracts from any judicial review rights presently enjoyed by an inmate in an institution. Some may feel that existing judicial review is unwarranted. How could we tolerate for one moment in this country arbitrary governmental action? Clearly, it should not go unchallenged. Existing law, which this bill does not add to, permits challenges to a decision of a parole board where the claimed action of the parole board is arbitrary, capricious, or

---

5. This dispute, however, is somewhat transparent. All of the courts at the time the Parole Act was enacted agreed that the Parole Board's decisions were committed to discretion. *See, e.g.,* text accompanying this note. *See also Addonizio,* 442 U.S. at 187–88, 99 S.Ct. at 2241–42 (applying the former Parole Act). The only "disagreement" was over whether these decisions were reviewable for abuse of discretion. *Compare Calabro v. United States Board of Parole,* 525 F.2d 660, 661 (5th Cir.1975), *reh'g denied,* 529 F.2d 1032 (1976) *with United States v. Norton,* 539 F.2d 1082, 1083 (5th Cir.1976),

cert. denied, 429 U.S. 1103, 97 S.Ct. 1129, 51 L.Ed.2d 533 (1977). However, many courts which had indicated that the Board's decisions were reviewable for abuse of discretion *also* stated that the abuse *must violate the Constitution. See, e.g., Billiteri,* 541 F.2d at 944 (citing authorities). Other circuits which reviewed parole determinations for abuse of discretion did not make clear whether the abuse would have to reach constitutional dimensions to justify reversal. *See, e.g., Dye,* 558 F.2d at 1378 (*citing Billiteri*).

in violation of law. Retreat from this existing law would be wrong.

It seems to me that it is consistent with the American system of fairness that if a parole applicant can demonstrate in a judicial proceeding that the parole authorities have violated their own rule, or that the parole authorities have acted arbitrarily, that man should not be denied a remedy. This bill does not create the remedy. That is already available to him under existing law. Accordingly this argument about excessive judicial review, I think, is overdrawn.

121 Cong.Rec. 15706 (1975) (statement of Rep. Wiggins).[6]

The Senate Report contained the following statement regarding the limits on the Commission's decision-making powers in the context of constitutional challenges:

> The constitutional test to be applied to parole is not one of right, but whether or not parole is administered in a fashion that is neither arbitrary nor capricious to the individual, nor unfairly jeopardizes the legitimate aim of society to control deviant behavior.

*Senate Report, supra,* at 19, *reprinted in* 1976 U.S.Code Cong. & Ad.News at 341.

Hence, the language and legislative history of the Parole Act do not indicate that Congress intended to give the Commission an unbridled discretion or remove the Commission's decision-making processes entirely from judicial review.

### 2. *The Plenary Review Position*

The second view builds upon the foregoing analysis but goes a step farther. According to this view, although the ultimate decision to grant or deny parole may be committed to discretion, see *Addonizio,* 442 U.S. at 188–89, 99 S.Ct. at 2242, the *process* of decision-making is not. At a

minimum, the requirement that the Commission show "good cause" for rendering a decision "notwithstanding" the Guidelines (18 U.S.C. § 4206(c)) authorizes a court to review the Commission's interpretation and application of the Guidelines for abuse of discretion. If the Commission has abused its discretion in interpreting and applying the Guidelines, then it has rendered a decision outside the scope of discretion granted by Congress. In short, the greater *excludes* the lesser; the power to exercise discretion to grant or deny parole does not include the power to abuse that discretion in the decision-making process.

Like the first view, however, the second also ignores significant parts of the legislative history. In the Joint Report on the Parole Act, Congress repeatedly emphasized that certain "process" decisions were committed to the Commission's discretion and were, in the words of Congressman Drinan, therefore "exempted ... from review in the courts under the APA." 122 Cong.Rec. 5164 (1976) (statement of Rep. Drinan). The Joint Report stated: "It is the intent of the Conferees that the Parole Commission make certain judgments pursuant to [18 U.S.C. § 4206 (establishing criteria for parole decisions)], and that the substance of those judgments is committed to the discretion of the Commission." *Joint Report, supra* at 25, *reprinted in* 1976 U.S.Code Cong. & Ad.News at 358. Specifically, Congress intended that these decisions should include "judgments" as to: the "institutional behavior of each prospective parolee," *id.;* the "nature and circumstances of the offense and the history and characteristics of the prisoner," *id.;* the "concepts of general and special deterrence, retribution and punishment....," *id.* at 26, 1976 U.S.Code Cong. & Ad.News at 358; the "relevance of material before the

---

6. Congressman Wiggins also stated:
   What, then, is the current right of a person in custody who feels that he has been treated arbitrarily, capriciously, without cause, or perhaps in violation of internal rules? Is he without a remedy? Of course he is not. The casebooks are full of such cases now.

121 Cong.Rec. 15706 (1975). Although Congressman Wiggins made these statements before Congress added the review provisions of section 4218(d), they are probative on Congress's understanding of then existing case law.

Commission," *id.* at 28, *reprinted in* 1976 U.S.Code Cong. & Ad.News at 360; and the "statement of criteria for parole determinations, ..." *id.* at 21, *reprinted in* 1976 U.S.Code Cong. & Ad.News at 353. By committing these judgments to discretion, Congress created a zone or field within which the Commission could exercise "absolute discretion." *Garcia,* 660 F.2d at 989. Congress did not intend to permit review within this area.

The contention that we may review all aspects of the parole decision-making process for abuse of discretion contains two other serious problems. First, Wallace and other prisoners who contest the Commission's parole determinations proceed in federal court by way of a petition for a writ of habeas corpus. The purpose of the "Great Writ" is to release individuals from *unlawful* or *illegal* confinement. *See, e.g., Preiser v. Rodriguez,* 411 U.S. 475, 484, 93 S.Ct. 1827, 1833, 36 L.Ed.2d 439 (1973); *Nguyen Da Yen v. Kissinger,* 528 F.2d 1194, 1202 (9th Cir.1975). A prisoner, however, has no general right to release on parole. *See, e.g., Stroud v. United States Parole Commission,* 668 F.2d 843, 847 (5th Cir.1982); *Brown,* 528 F.2d at 1054–55. As the drafters of the Parole Act stated: "Parole is neither a matter of right for the inmate nor a matter of grace for the state, it is a matter of administrative discretion." *Senate Report, supra* at 19, *reprinted in* U.S. Code Cong. & Ad.News at 341. In light of the unmistakable congressional intent to shield the decision to grant or deny parole from the review provisions of the APA, we cannot agree that every potential "abuse of discretion" within the Commission's scope of discretion constitutes an "illegal" detention. *See Luther,* 627 F.2d at 76 (also

recognizing that detention may be illegal in some circumstances; *see* our discussion *infra* ); *Brown,* 528 F.2d at 1054–55; *de la Cova v. Gonzalez Abreu v. United States,* 611 F.Supp. 137, 140 (D.P.R.1985) (same).[7]

Second, a plenary review of the Commission's decision-making processes effectively nullifies the congressional directive that the decision to grant or deny parole is committed to discretion. The *process* of decision-making may not be separated, conceptually or practically, from the ultimate *decision* to grant or deny parole. This is because the Commission always interprets and applies the Guidelines in rendering parole decisions. *See* 18 U.S.C. § 4206(a) (and our discussion at section B *supra*). To state that a court may review the decision-making process but not the product effectively nullifies the scope of absolute discretion granted by Congress. For if a court may review the Commission's analysis and interpretation of the Guidelines, it may always second-guess the substantive decision to grant or deny parole. We find unacceptable a statutory construction which eviscerates the limitations on judicial review established by Congress in the Parole Act. *See Chaney,* 105 S.Ct. at 1655 (rejecting similar mode of analysis; recognizing "the commonsense principle of statutory construction that sections of a statute generally should be read 'to give effect, if possible, to every clause ... [.]' see *United States v. Menasche,* 348 U.S. 528, 538, 75 S.Ct. 513, 520, 99 L.Ed. 615 [ (1955) ] .... ").

### 3. *Resolution and Jurisdictional Conclusions*

From the foregoing critique of the two "all or nothing" approaches we draw the

---

7. In discussing actions committed to agency discretion, one commentator has forcefully stated:

Even assuming that courts have the prestige and power to remedy all such abuses when found, to demand that courts give review whenever a complainant utters the formula 'abuse of discretion' is to hazard a serious misallocation of judicial resources as well as a stifling of agency and congressional programs. The capacity of individuals to bring frivolous claims cannot be overlooked. Nor can it be assumed that the scope of review can be

so limited that agencies will remain free to administer their programs creatively. Even the well-intentioned court may find it impossible to review agency actions without expending an inordinate amount of time analyzing its functions, or without somewhat constricting valid agency discretion, given the vagaries of any standard of review, including review for abuse of discretion.

Saferstein, *supra* note 2, at 374–75 (footnote omitted).

following conclusions regarding our jurisdiction to review the Commission's decision-making processes.

**a.** Our review of the provisions of the Parole Act and its legislative history reveals that Congress intended to carve out an area of decision-making which, like the decision to grant or deny parole, is committed to agency discretion and hence unreviewable even for abuse of discretion. *See, e.g., Garcia,* 660 F.2d at 988–89 (and cases cited *supra).* This area includes "judgments" made by the Commission involving a broad range of factors which it takes into account in arriving at the ultimate decision to grant or deny parole. *See Joint Report, supra* at 21, 25–26, 28, *reprinted in* 1976 U.S.Code Cong. & Ad.News at 353, 358, 360 *(see* our discussion in section B2 *supra* ). It follows that unless a petitioner alleges the Commission acted beyond the scope of discretion granted by Congress, a federal court has no jurisdiction to entertain his claim. By definition, a bare allegation that the Commission has abused *its discretion* acknowledges that the Commission has exercised a judgment, if improperly, within its discretion. Congress has specifically withdrawn such cases from our jurisdiction. *See, e.g., Garcia,* 660 F.2d at 990; *Brown,* 528 F.2d at 1055. *See also infra* note 8.

**b.** Congress has, however, delineated boundaries beyond which the Commission may not act. A court may consider whether the Commission has acted outside these statutory limits. *See, e.g., Farkas,* 744 F.2d at 39; *supra* note 4. A claim that the Commission has acted outside its statutory limits typically involves an issue of statutory construction which we review de novo. *See Arizona Department of Economic Security v. United States Department of Labor,* 790 F.2d 782, 784 (9th Cir.1986). The Commission's interpretation of the Parole Act (and, if applicable, the Guidelines, see *infra* ), however, is entitled to deference. *See id. See, e.g., Markair, Inc. v. CAB,* 744 F.2d 1383, 1385 (9th Cir. 1984) *(citing NLRB v. Bell Aerospace Co.,* 416 U.S. 267, 274–75, 94 S.Ct. 1757, 1761–

62, 40 L.Ed.2d 134 (1974)). We have mentioned the limitations placed by Congress upon the Commission's decision-making processes. For example, Congress has provided that the Commission must take into account certain factors in rendering an individual parole decision. 18 U.S.C. §§ 4206(a)(1), (2), 4207 (if relevant and available). Although the relevance of the information considered by the Commission is a matter committed to discretion, *Joint Report, supra,* at 28, *reprinted in* 1976 U.S.Code Cong. & Ad.News at 360, a court may review whether the Commission completely failed to consider these factors which by statute it is required to consider in rendering its parole decision. Similarly, Congress has provided that the Commission may render a parole decision "notwithstanding" or "outside" the Guidelines upon a showing of "good cause." *Id.* § 4206(c); *Joint Report, supra,* at 27, *reprinted in* U.S.Code Cong. & Ad.News at 359–60. A court has jurisdiction to consider a claim that the Commission failed to show "good cause." As noted, Congress has indicated that "good cause" includes reasons put forth by the Commission in good faith which are not "arbitrary, irrational, unreasonable, irrelevant or capricious." *Joint Report, supra,* at 27, *reprinted in* U.S. Code Cong. & Ad.News at 359.

A court may also consider whether the Commission rendered a decision "outside" the Guidelines and hence must show "good cause." If a court could not consider this issue, the requirement that the Commission show "good cause" to render a decision "notwithstanding" the Guidelines would be meaningless. To conclude otherwise would be novel and contrary to controlling precedent. Congress has written into the Act express limits on the Commission's actions, and hence we have jurisdiction to review whether those limits have been exceeded. *See supra* note 4 and accompanying text, and *infra* note 8 and accompanying text. *See Michigan Academy,* 106 S.Ct. at 2136–42 (examining Medicare statute which precludes review of benefit "determinations," but not the "meth-

od" by which such decisions are made). However, Congress has recognized that the Commission must often make "judgments" in applying the Guidelines on matters such as the nature and circumstances of the offense and the history and characteristics of the prisoner, and has indicated that "the substance of those judgments is committed to the discretion of the Commission." *Id.* at 25, *reprinted in* U.S.Code Cong. & Ad. News at 358. In determining whether the Commission has "gone outside" the Guidelines, *id.* at 26, *reprinted in* U.S.Code Cong. & Ad.News at 358, therefore, it is appropriate for the court to inquire whether the Commission has in fact made a "judgment" within its discretion. Specifically, the court's inquiry is addressed to whether the Commission's decision involves the exercise of judgment among a range of possible choices or options, or involves a plain violation of a matter which does not admit of discretion and choice. *See Abdelhamid,* 774 F.2d at 1450 (informed judgments of administrative officials unreviewable where action is committed to discretion). If the decision falls into the former category, the Commission has merely exercised a judgment within its discretion and judicial review must cease. *See Garcia,* 660 F.2d at 990 (applying this method of analysis in dispute over classification of "offense behavior"); *Brown,* 528 F.2d at 1055 (same). If the decision falls into the

latter category, however, the Commission's failure to follow the Guidelines renders its decision one made outside the Guidelines and the Commission must show "good cause" for that action. To paraphrase former Congressman Wiggins, a prisoner should not be without a remedy where he can show a "violation" of a non-discretionary standard (i.e., a "rule"). 121 Cong.Rec. 15706 (1975) (statements of Rep. Wiggins).[8]

■ c. Finally, a court has jurisdiction to consider whether the Commission violated the Constitution. *See, e.g., Califano v. Sanders,* 430 U.S. 99, 109, 97 S.Ct. 980, 986, 51 L.Ed.2d 192 (1977); *Johnson v. Robison,* 415 U.S. 361, 367–68, 94 S.Ct. 1160, 1165–66, 39 L.Ed.2d 389 (1974) (legislative history in that case indicated no intent to preclude constitutional review under particular statute); *Garcia,* 660 F.2d at 988. We therefore have jurisdiction to entertain a claim that the Guidelines violated the *ex post facto* clause, and this and other constitutional claims are reviewable de novo. *United States v. McConney,* 728 F.2d 1195, 1200–01 (9th Cir.), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). Similarly, a court could consider a claim that the Commission's action in granting or denying parole was so arbitrary as to violate due process. *Luther,* 627 F.2d at 76; *Billiteri,* 541 F.2d at 944; *Zannino,* 531 F.2d 687, 690–91; *Senate*

---

**8.** The Commission, like other agencies, is thus bound by its own regulations so long as they remain in force. *See United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260, 267, 74 S.Ct. 499, 503, 98 L.Ed.2d 681 (1954). The Guidelines are unusual regulations in that Congress has authorized the Commission to exceed them when it shows "good cause."

The concurrence by Judge Hall acknowledges that a court has jurisdiction to determine whether the Commission has shown good cause for rendering a decision outside the Guidelines, see 18 U.S.C. § 4206(c), but maintains that a court has no jurisdiction to determine whether the Commission has rendered a decision outside the Guidelines and hence must show good cause. According to this view, the Commission's statement that it has followed the Guidelines is binding on a federal court, even though the Commission has plainly violated a Guideline provi-

sion which does not admit of discretion and choice, and the Commission has denied the prisoner's request to show good cause for such deviation. In contrast, we believe that the provision committing Commission decisions to discretion (section 4218(d)) and the provision requiring good cause (section 4206(c)) should not be construed so that one provision effectively nullifies the other. *See Chaney,* 105 S.Ct. at 1655 (every provision in statute should be given effect). *See also Michigan Academy,* 106 S.Ct. at 2136–42. Further, contrary to the statement in the concurrence by Judge Hall, we do not apply an abuse of discretion standard. *See supra* section 3a (so stating). Under that standard, a court will reverse if it finds a clear error in judgment. *See e.g., Fjelstad v. American Honda Motor Co.,* 762 F.2d 1334, 1331 (9th Cir.1985). A court has no jurisdiction to second-guess judgments by the Commission.

*Report, supra* at 19, *reprinted in* 1976 U.S.Code Cong. & Ad.News at 341. *See generally Wong Wing Hang v. INS,* 360 F.2d 715, 718–19 (2nd Cir.1966) (Friendly, J.).

C. *Application of Wallace's Challenges to the Commission's Parole Classification*

■ Applying the foregoing jurisdictional rules, we have no jurisdiction to entertain Wallace's claim that the Commission abused its discretion in classifying his "offense behavior" as "Interference with a Flight Crew." We may only consider whether the Commission exceeded the scope of its discretion in deciding that was the proper classification for Wallace's offense.

The Commission did not exceed the scope of its discretion, violate any provision of the Parole Act, or render a decision outside the Guidelines in making this determination. The Guidelines permit the classification of an offense as "Interference with a Flight Crew" if "the conduct or attempted conduct has potential for creating a significant safety risk to an aircraft or passengers...." 28 C.F.R. § 2.20 (242)(a). The Commission found that Wallace's offense had the potential to cause injury or death and destruction to an aircraft and passengers. The Commission's determination did not violate a mandatory or non-discretionary standard, but rather, involved a judgment among a range of possible choices and options relating to the severity of Wallace's offense. Wallace has pointed to no provision in the Act or Guidelines removing discretion from the Commission to classify his offense in this category. We hold that the Commission acted within the scope of discretion granted by Congress and hence our review of the Commission's classification of Wallace's offense is complete.[9]

9. Wallace has not contended that the classification of his crime was so arbitrary and capricious as to amount to a violation of due process. Even if we were to construe Wallace's argument as challenging the constitutionality of his classification, we reject that challenge.

## III

### EX POST FACTO CHALLENGE TO THE GUIDELINES

■ We next consider Wallace's contention that the application of the 1983 Guidelines, as amended, violated the *ex post facto* clause of the Constitution.

"Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed" violates the *ex post facto* clause of the Constitution. *Calder v. Bull,* 3 U.S. 386, 390, 1 L.Ed. 648 (3 Dall. 1798) (*quoted* in *Rifai v. United States Parole Commission,* 586 F.2d 695, 697 (9th Cir. 1978)). Our previous decisions in *Roth,* 724 F.2d 836, 840; *Rifai,* 586 F.2d at 697–99, and the decisions in the vast majority of other circuits, *see, e.g., Inglese v. United States Parole Commission,* 768 F.2d 932, 934–39 (7th Cir.1985); *Dufresne v. Baer,* 744 F.2d 1543, 1549–50 (11th Cir.1984), *cert. denied,* —— U.S. ——, 106 S.Ct. 61, 88 L.Ed.2d 49 (1985); *Stroud v. United States Parole Commission,* 668 F.2d 843, 847 (5th Cir.1982); *Hayward v. United States Parole Commission,* 659 F.2d 857, 862 (8th Cir.1981), *cert. denied,* 456 U.S. 935, 102 S.Ct. 1991, 72 L.Ed.2d 454 (1982); *Warren v. United States Parole Commission,* 659 F.2d 183, 193–97 (D.C.Cir.1981), *cert. denied,* 455 U.S. 950, 102 S.Ct. 1454, 71 L.Ed.2d 665 (1982), *but see United States ex rel. Forman v. McCall,* 709 F.2d 852, 859–63 (3rd Cir.1983), have held that the guidelines are not laws for purposes of the *ex post facto* clause. That Congress has placed boundaries on the Commission's discretion does not transform the Guidelines into law. As we stated in *Rifai,* the Guidelines are "procedural guideposts without the characteristics of laws." 586 F.2d at 698 (footnote omitted) (*citing Ruip v. United States,* 555 F.2d 1331 (6th Cir.1977)).

We are not persuaded by Wallace's argument that the Guidelines are laws because the Commission allegedly sets presumptive

parole dates within the guidelines in roughly eighty-five percent of all cases. *See* U.S. Parole Commission Report 38, *Workload and Decision Trends: Statistical Highlights Fiscal Years 1981–1983. See also Forman,* 709 F.2d 861 & n. 21 (collecting cases which have noted the high frequency of Commission decisions within the Guidelines). *But see* Eskridge, *Sentencing Guidelines: To Be Or Not To Be,* Fed.Probation 70, 73 (March 1986) (discussing report indicating that the Guidelines are applied inconsistently). The Commission retains the discretion to set presumptive parole dates above or below the Guidelines for "good cause." 18 U.S.C. § 4206(c). *See Rifai,* 586 F.2d at 699 & n. 7. As noted, the Guidelines were adopted to promote greater consistency in parole decision making. *See* 28 C.F.R. § 2.20(a). This objective would not be achieved if the Commission did not set presumptive parole dates within the Guidelines in a high percentage of cases. *See Inglese,* 768 F.2d at 937. Given the discretion retained by the Commission, the frequency with which the Guidelines are followed does not convert the Guidelines into laws for purposes of the *ex post facto* clause.

## IV

## CONCLUSION

The application to Wallace of the 1983 Guidelines, as amended, did not violate the *ex post facto* clause of the Constitution. The Parole Commission did not act outside the Guidelines in classifying Wallace's offense as "Interference with a Flight Crew." We have no jurisdiction to entertain Wallace's claim that the Commission abused its discretion in classifying his "offense behavior" in category seven. We overrule our previous decisions only to the extent that we have held that Commission decisions granting or denying parole are subject to judicial review for an abuse of discretion.[10]

AFFIRMED.

10. *See, e.g., Tatum,* 786 F.2d at 963; *Torres-Macias,* 730 F.2d at 1216; *Roth,* 724 F.2d at 839–40; *Williams,* 707 F.2d at 1063–64; *Hatton,*

CYNTHIA HOLCOMB HALL, Circuit Judge, with whom Circuit Judges GOODWIN, J. BLAINE ANDERSON, and KOZINSKI join, concurring in the judgment:

I agree with the result the majority has reached, and with the majority's conclusion that we have jurisdiction to review constitutional and statutory challenges to Parole Commission decisions. However, I disagree with the majority's conclusion that our jurisdiction to review claims that the Commission has violated the Guidelines or its own regulations under the Administrative Procedure Act depends on "whether the Commission's decision involves the exercise of judgment among a range of possible choices of options, or involves a plain violation of a matter which does not admit of discretion and choice." Judicial review of allegations that the Commission has violated its own regulations is inappropriate when Congress has specified by statute that Commission decisions granting or denying parole are committed to agency discretion.

## I

The Administrative Procedure Act (APA) provides two exceptions to the general rule that administrative actions are subject to judicial review:

§ 701. Application; definitions

(a) [The Administrative Procedure Act] applies, according to the provisions thereof, except to the extent that—

(1) statutes preclude judicial review; or

(2) agency action is committed to agency discretion by law.

5 U.S.C. § 701(a). In *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), the Supreme Court analyzed these two exceptions as they applied to the Secretary of the Interior's claim that his decision to run a

693 F.2d at 90; *O'Brien,* 591 F.2d at 55; *Wyatt v. United States Parole Commission,* 571 F.2d 1089, 1091 (9th Cir.1977).

highway through a public park was not subject to judicial review.

In this case, there is no indication that Congress sought to prohibit judicial review and there is most certainly no "showing of 'clear and convincing evidence' of a ... legislative intent" to restrict access to judicial review. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 141 [87 S.Ct. 1507, 1511, 18 L.Ed.2d 681] (1967).

Similarly, the Secretary's decision does not fall within the exception for action "committed to agency discretion." This is a very narrow exception.... The legislative history of the Administrative Procedure Act indicates that it is applicable in those rare instances where "statutes are drawn in such broad terms that in a given case there is no law to apply." S.Rep. No. 752, 79th Cong., 1st Sess. 26 (1945).

401 U.S. at 410, 91 S.Ct. at 820. In *Heckler v. Chaney*, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), the Court expounded on the distinction it had drawn in *Overton Park*.

The above [language from *Overton Park*] answers several of the questions raised by the language of § 701(a).... First, it clearly separates the exception provided by § (a)(1) from the § (a)(2) exception. The former applies when Congress has expressed an intent to preclude judicial review. The latter applies in different circumstances; even where Congress has not affirmatively precluded review, review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.... [T]his construction satisfies the principle of statutory construction mentioned earlier, by identifying a separate class of cases to which § 701(a)(2) applies.

105 S.Ct. at 1655.

In this case we are considering Congress' statement in the Parole Act, 18 U.S.C. § 4218(d), that Commission actions granting or denying parole are "committed to agency discretion for purposes of section 701(a)(2) of title 5, United States Code." This statement is the "clear and convincing evidence" of a legislative intent to prohibit judicial review necessary to preclude such review under section 701(a)(1). *See Farkas v. United States*, 744 F.2d 37, 39 (6th Cir. 1984). *Cf. Briscoe v. Bell*, 432 U.S. 404, 409–14, 97 S.Ct. 2428, 2431–34, 53 L.Ed.2d 439 (1977) (holding that determination or certification of the Attorney General under section 4(b) of the Voting Rights Act, 42 U.S.C. § 1973b(b), was not subject to judicial review when section 4(b) provided that such actions were "not reviewable in any court"). The legislative intent to prohibit judicial review would be easier to perceive if, in the Parole Act, Congress had referred to section 701(a)(1), rather than section 701(a)(2), but the reference to section 701(a)(2) is sufficient. There is no need to consider the application of section 701(a)(2) because the exception to judicial review in section 701(a)(1) is applicable. *See United States v. Erika, Inc.*, 456 U.S. 201, 211, 102 S.Ct. 1650, 1655, 72 L.Ed.2d 12 (1982) (Court concluded that its "task was at an end" once it found legislative intent to preclude judicial review).

Federal courts have jurisdiction to review claims that the Commission's actions violated the constitution. *Cf. Johnson v. Robison*, 415 U.S. 361, 366–74, 94 S.Ct. 1160, 1165–69, 39 L.Ed.2d 389 (1974) (finding jurisdiction to review constitutionality of veteran's benefits legislation even though statute prohibited judicial review of certain administrative decisions). Federal courts also have jurisdiction to review allegations that the Commission has violated the Parole Act by failing to consider certain factors, *see* 18 U.S.C. §§ 4206, 4207, or setting a presumptive parole date outside of the Guidelines without good cause, *see* 18 U.S.C. § 4206(c). These are statutory limits on the Commission's discretion over which we have jurisdiction. 28 U.S.C. § 1331; *see Garcia v. Neagle*, 660 F.2d 983, 988–89 (4th Cir.1981), *cert. denied*, 454 U.S. 1153, 102 S.Ct. 1023, 71 L.Ed.2d 309 (1982). This is where our jurisdiction ends however. Section 4218(d) is an expression

of legislative intent to preclude judicial review which deprives federal courts of the authority to review Commission decisions for an abuse of discretion under the APA, even when mandatory Guidelines or regulations are at issue.

## II

The majority, however, continues past this logical conclusion by stating that:

> to recognize, as we must, that the Commission's substantive decisions to grant or deny parole are unreviewable does not necessarily answer whether the Commission's interpretation of the Guidelines are also shielded from review.... We must still consider whether and to what extent the removal of our jurisdiction to review the Commission's *decisions* to grant or deny parole also precludes our review of the Commission's decision making *processes.*

The majority then relies on conflicting statements regarding judicial review in the legislative history of the Parole Act to conclude that Congress intended for courts to review Commission decisions which are governed by a mandatory standard under the Guidelines or other regulations, but not those decisions in which the Guidelines or other regulations permit the Commission "a range of choices." This analysis is troublesome in several respects.

The inquiry into whether there are regulations which a court may look to in reviewing an agency decision is a component of the section 701(a)(2) determination of whether a matter is committed to agency discretion by law. *See Abdelhamid v. Ilchert,* 774 F.2d 1447, 1450 (9th Cir.1985); *Ness Investment Corp. v. United States Department of Agriculture,* 512 F.2d 706, 714–15 (9th Cir.1975). If there are no statutory or regulatory directives then a court may conclude that the agency action at issue falls into that narrow class of cases in which there is no law to apply. *See Abdelhamid,* 774 F.2d at 1450. However, the Court's statement in *Heckler v. Chaney,* that section 701(a)(1) and section 701(a)(2) provide separate exceptions to judicial review, demonstrates that the majority's inquiry into the existence and mandatory nature of regulations should not be undertaken when Congress "has expressed an intent to preclude judicial review." 105 S.Ct. at 1655. Once Congress has specified that a decision is committed to agency discretion we should not dissect that decision into its smallest components and then review each of the components to determine if it is "committed to agency discretion by law." *See Farkas,* 744 F.2d at 38 (Commission's factual findings are "necessary components of the Commission's ultimate decision to deny parole and are not subject to [judicial] review").[1]

Holding that we have jurisdiction to review Commission decisions governed by mandatory regulations under the APA even though Congress has specified that

---

1. The majority places undue emphasis on the legislative history in drawing its distinction between mandatory Guidelines or regulations and those which permit the Commission a range of choices. Although legislative history should be considered in determining whether there is clear and convincing evidence of a legislative intent to preclude judicial review, *see Block v. Community Nutrition Institute,* 467 U.S. 340, 345, 104 S.Ct. 2450, 2454, 81 L.Ed.2d 270 (1984), the legislative history should not be used to contradict a statutory directive.

Much of the legislative history discussed thoroughly in the majority opinion demonstrates Congress' intent to limit judicial review of Commission decisions. *See, e.g.,* H.Conf.Rep. No. 94–838, 94th Cong., 2d Sess. 25, 36, *reprinted in* 1976 U.S.Code Cong. & Ad.News at 358, 368 (*Joint House-Senate Conference Report*) [hereinafter *Joint Report*]. The majority places great emphasis on portions of the legislative history which indicate Congress' concern that judicial review not be completely abrogated, or that Congress believed judicial review would remain the same as before the adoption of the Parole Act. *See, Joint Report* at 19, 36, *reprinted in* 1976 U.S.Code Cong. & Ad.News at 341, 368; 122 Cong.Rec. 5164 (1976) (statement of Rep. Drinan); 121 Cong.Rec. 1570 (1975) (statement of Rep. Wiggins). But section 4218(d), as adopted, precludes judicial review of Commission decisions to grant or deny parole. The legislative history, especially the statements of individual congressmen or senators, should not be used to circumvent this statutory directive.

the decision to grant or deny parole is committed to agency discretion creates two practical problems. First, under this approach, Congress will have difficulty specifying areas of agency action which are not subject to judicial review as contemplated by the APA. A statement that a matter is committed to agency discretion will be given effect at the ultimate decision level, but when the decision is broken down into its component parts the result may be that the decision is actually subjected to judicial review for an abuse of discretion. Second, agencies will have a disincentive to adopt regulations guiding their decisions because matters which would not otherwise be subject to judicial review would become reviewable if a court determines that the regulation is mandatory.

### III

The due process clause of the fifth amendment provides the appropriate means for addressing claims that the Commission has failed to follow the Guidelines or its own regulations.

Under this approach, the first question is whether the Parole Act creates a liberty interest which is subject to due process protection. The Supreme Court has held that mandatory language in a Nebraska parole statute created a liberty interest which was protected under the due process clause of the fourteenth amendment. *See Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 12, 99 S.Ct. 2100, 2106, 60 L.Ed.2d 668 (1979). Neither the Supreme Court nor this court has determined whether the language of the federal Parole Act is sufficiently mandatory to create such a liberty interest under the fifth amendment. *Compare Solomon v. Elsea*, 676 F.2d 282, 284–85 (7th Cir.1982) (finding liberty interest) *with Shahid v. Crawford*, 599 F.2d 666, 670 n. 5 (5th Cir.1979) (noting that language of the federal Parole Act is less mandatory than the Nebraska act analyzed in *Greenholtz*, but avoiding issue of whether the federal Parole Act ever creates a liberty interest by finding that there is no liberty interest

before minimum time for parole eligibility has been served).

If the federal Parole Act is found to create a liberty interest, then the question is whether the prisoner has been afforded the "quantum and quality" of process due in this particular situation. *See Greenholtz*, 442 U.S. at 13, 99 S.Ct. at 2106 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976)). Although the availability of judicial review under both the due process analysis outlined by the Supreme Court in *Greenholtz* and the majority's analysis under the APA is determined by the existence of mandatory language, the inquiry into the amount and quality of due process required to protect a liberty interest specified in *Greenholtz* is a more deferential review of the Commission's actions than the abuse of discretion review the majority would apply under the APA.

Because Wallace has not claimed that the Commission's application of the Guidelines violated his due process rights, I find it unnecessary to undertake the due process inquiry in this concurring opinion.

KOZINSKI, Circuit Judge, with whom Circuit Judge J. BLAINE ANDERSON joins, concurring in the judgment.

It is only fair to start with the concession that today's opinion is the product of invited error. By and large the court follows the path suggested by the government in its brief and at oral argument; no one should therefore be heard to complain that the court fails to adequately preserve the Parole Commission's prerogatives. Yet, the majority opinion is troubling in a number of ways: it perpetuates the myth that laws constraining executive action mean nothing unless they are judicially enforceable; it elevates bits and pieces of legislative history over clear and unambiguous statutory language; and it draws gossamer distinctions that invite litigation. I write not to respond to the majority's reading of the law; Judge Hall's concurrence, which I join, does this lucidly and persuasively. My observations concern the majority's

methodology and the unfortunate implications of its approach.

## I.

As the majority recognizes, *supra* p. 1544, the Parole Act of 1976 commits the decision whether to grant or deny parole to the Parole Commission's unreviewable discretion. 18 U.S.C. § 4218(b) (1982). The court nevertheless rejects the "syllogistic" conclusion that this necessarily precludes review of "the process by which the Commission reaches that decision." *Supra* p. 1547. The court's reluctance to accept the logic of the statute is based on its observation that the Act limits "the scope of discretion granted the Commission" and "the Parole Act reveals no congressional design to allow the Commission to transgress these limitations." *Id.* The court concludes that judicial review is necessary to keep the agency from going astray. *Id. See also supra* p. 1551 ("[i]f a court could not consider this issue, the requirement that the Commission show 'good cause' to render a decision 'notwithstanding' the Guidelines would be meaningless").

The court's unspoken but powerful premise is that executive branch officials cannot be trusted to stay within the law and that limitations on their authority are empty words on paper unless they can be judicially enforced. This does not, in my view, comport with reality; nor does it show appropriate deference to officers of a coordinate branch of our government.

Contrary to the court's assertion, a statutory limitation on executive action is not rendered meaningless because a judge can't be called upon to enforce it; nor is judicial review the only way to ensure that the law will be followed. An Act of Congress is the law of the land, a law all federal officials are sworn to uphold whether they be in the judicial, legislative or executive branches of government. 28 U.S.C. § 453 (1982) (judicial); 2 U.S.C. §§ 21, 25 (1982) (legislative); 5 U.S.C. § 3331 (1982) (executive). The first and by far the most important assurance that the law will be followed lies in the diligence and good faith of those administering it. For the overwhelming number of the millions of decisions made by our federal government every year, this is the *only* assurance. Our system would be gridlocked if executive officials could not be trusted to carry out the law whenever their actions escape judicial review.

Even where Congress chooses not to rely on the acting official's good faith alone, judicial review is not the only available safeguard. One option is to provide administrative appeals within the executive branch itself. Formal and informal review within the agency can correct errors of law, curb abuses of discretion and ensure that the decision is not the product of a single official's passion or prejudice. The Parole Act provides for such internal administrative review. It establishes a three-member National Appeals Board to which prisoners such as Wallace may appeal denials, modifications or revocations of parole. 18 U.S.C. §§ 4204(a)(5), 4215 (1982). Under Parole Commission regulations, appeal may be based on misapplication of the guidelines, mistaken conclusions of fact or failure to follow proper procedures.[1] Moreover, a Regional Commissioner may reopen a case at any time based on new information. 28 C.F.R. § 2.28(a) (1985). This "in-

---

1. The regulations provide that a prisoner may appeal a parole decision on any of the following grounds:

    (1) That the guidelines were incorrectly applied ...;

    (2) That a decision outside the guidelines was not supported by the reasons or facts as stated;

    (3) That especially mitigating circumstances ... justify a different decision;

    (4) That a decision was based on erroneous information ...;

    (5) That the Commission did not follow correct procedure ...;

    (6) There was significant information in existence but not known at the time of the hearing;

    (7) There are compelling reasons why a more lenient decision should be rendered on grounds of compassion.

28 C.F.R. § 2.26(e)(1985).

ternal appeal process is provided to assure fairness in every decision, and to be sure that both law and guidelines are administered fairly across the country." S.Rep. No. 94–369, 94th Cong., 2d Sess. 15, *reprinted in* 1976 U.S.Code Cong. & Ad. News 335, 336.[2]

Finally, Congress itself can and does monitor the behavior of executive branch officials. This is not an empty threat. Proliferation of congressional committees and subcommittees, aided by burgeoning congressional staff, has led to extensive micromanagement of executive agency practices. A recent study describes this phenomenon as follows:

> Congress has expanded the scope of its concern for executive branch activities to include the most minute details of operations. These range from dictating the size and style of agency wall calendars to overruling a Treasury Department decision on a mailbox address for payments of tobacco taxes, to requiring the assignment of an attorney to a government office in Stillwater, Okla.

R. Fitzgerald & G. Lipson, *Pork Barrel: The Unexpurgated Grace Commission Story of Congressional Profligacy* xxv (Cato Inst.1984); *see also id.* at 44–49, 92–98 (citing numerous examples of legislative micromanagement).

Judicial review is, of course, yet another way to assure fidelity to statutory and regulatory standards. But it is not the only way. Congress, it seems to me, should have the option to invoke judicial review, rely on its own oversight or leave matters entirely to executive officials. Here, Congress expressly left to the executive branch the decision to grant or deny parole. As Judge Hall points out, at 1557, by refusing to honor that choice, the court denies Congress the flexibility of placing constraints on executive action while avoiding the cost and delay of judicial review.

## II.

As Judge Hall further notes, the majority places far too much reliance on legislative history. *Supra* pp. 1556–57 n. 1. The fact of the matter is that legislative history can be cited to support almost any proposition, and frequently is. The propensity of judges to look past the statutory language is well known to legislators. It creates strong incentives for manipulating legislative history to achieve through the courts results not achievable during the enactment process. The potential for abuse is great. Judge (now Justice) Scalia has persuasively warned against relying on detailed discussions in legislative reports:

> [T]he authoritative, as opposed to the persuasive, weight of the Report depends entirely upon how reasonable it is to assume that [its view] was reflected in the law *Congress* adopted. I frankly doubt that it is ever reasonable to assume that the details, as opposed to the broad outlines of purpose, set forth in a committee report come to the attention of, much less are approved by, the house which enacts the committee's bill. And I think it time for courts to become concerned about the fact that routine deference to the detail of committee reports, and the predictable expansion in that detail which routine deference has produced, are converting a system of judicial construction into a system of committee-staff prescription.

*Hirschey v. FERC,* 777 F.2d 1, 7–8 (D.C. Cir.1985) (Scalia, J., concurring) (emphasis original; footnote omitted). A footnote to this passage [3] vividly demonstrates the dan-

---

2. A statutory framework providing a comprehensive system of administrative remedies may itself foreclose judicial review not specifically authorized. *See Bush v. Lucas,* 462 U.S. 367, 388, 103 S.Ct. 2404, 2416, 76 L.Ed.2d 648 (1983) (comprehensive nature of civil service remedies reason for declining to create judicial remedy); *Veit v. Heckler,* 746 F.2d 508, 510–11 (9th Cir.1984) (no re-

view of federal personnel actions in view of extensive remedies already available).

3. This footnote, 777 F.2d at 7–8 n. 1, quotes this "illuminating exchange ... between members of the Senate, in the course of floor debate on a tax bill":

> **Mr. ARMSTRONG:** ... My question, which may take [the chairman of the Committee on Finance] by surprise, is this: Is it

ger of according legislative reports controlling weight: Reports are usually written by staff or lobbyists, not legislators; few if any legislators read the reports; they are not voted on by the committee whose views they supposedly represent, much less by the full Senate or House of Representatives; they cannot be amended or modified on the floor by legislators who may disagree with the views expressed therein. Committee reports that contradict statutory language or purport to explicate the meaning or applicability of particular statutory provisions can short-circuit the legislative process, leading to results never approved by Congress or the President. Of course, all this goes doubly for floor statements by individual legislators.

None of the legislative history cited by the court today specifically addresses the effect of 18 U.S.C. § 4218(d) which, by any fair reading, appears to preclude judicial review of all aspects of the Commission's decision to grant or deny parole. The most that can be said about these excerpts from the legislative record is that their authors labored under the impression that the Parole Act would not affect judicial review.

No one bothers to reconcile this hoped-for result with the language of the law about to be enacted. Taken literally, all this naysaying would read section 4218(d) right out of existence; if the law is to remain unchanged, why bother passing the section at all? Surely such predictions about how courts are likely to interpret a statute should not become self-fulfilling prophecies. If a legislator is troubled by a particular provision in a bill, he should try to modify or excise it during the enactment process. Courts should not allow individual legislators and their staffs to usurp the uniquely judicial function of statutory interpretation by countenancing unexplicated assertions that the law to be enacted won't mean much anyway.

### III.

Having bypassed clear statutory language in favor of nebulous assertions in the legislative history, the court confronts a dilemma that those who wrote the legislative reports did not have to deal with: how to reconcile the clear mandate of section 4218(d) with the assertions that the Parole

---

the intention of the chairman that the Internal Revenue Service and the Tax Court and other courts take guidance as to the intention of Congress from the committee report which accompanies this bill?
Mr. DOLE: I would certainly hope so....
Mr. ARMSTRONG: Mr. President, will the Senator tell me whether or not he wrote the committee report?
Mr. DOLE: Did I write the committee report?
Mr. ARMSTRONG: Yes.
Mr. DOLE: No; the Senator from Kansas did not write the committee report.
Mr. ARMSTRONG: Did any Senator write the committee report?
Mr. DOLE: I have to check.
Mr. ARMSTRONG: Does the Senator know of any Senator who wrote the committee report?
Mr. DOLE: I might be able to identify one, but I would have to search. I was here all during the time it was written, I might say, and worked carefully with the staff as they worked....
Mr. ARMSTRONG: Mr. President, has the Senator from Kansas, the chairman of the Finance Committee, read the committee report in its entirety?
Mr. DOLE: I am working on it. It is not a bestseller, but I am working on it.

Mr. ARMSTRONG: Mr. President, did members of the Finance Committee vote on the committee report?
Mr. DOLE: No.
Mr. ARMSTRONG: Mr. President, the reason I raise the issue is not perhaps apparent on the surface, and let me just state it: .... The report itself is not considered by the Committee on Finance. It was not subject to amendment by the Committee on Finance. It is not subject to amendment now by the Senate.
....
... If there were matter within this report which was disagreed to by the Senator from Colorado or even by a majority of all Senators, there would be no way for us to change the report. I could not offer an amendment tonight to amend the committee report.
... [F]or any jurist, administrator, bureaucrat, tax practitioner, or others who might chance upon the written record of this proceeding, let me just make the point that this is not the law, it was not voted on, it is not subject to amendment, and we should discipline ourselves to the task of expressing congressional intent in the statute.
128 Cong.Rec. S8659 (daily ed. July 19, 1982).

Commission's decisions are judicially reviewable after all. Seeking to serve two masters, the opinion winds up faithful to neither. On the one hand, the law plainly *is* changed by section 4218(d), contrary to what some legislators apparently hoped. On the other hand, the effect of section 4218(d) is blunted, shielding from judicial review some, but not all, aspects of the Parole Commission's decision. The result reflects its mixed pedigree.

The opinion seeks to draw a distinction between claims that the Commission has acted outside the scope of its discretion, which are reviewable, and claims that the Commission abused its discretion, which are not. *See, e.g., supra* pp. 1550–51. The distinction is, at best, counterintuitive. In trying to reconcile what are basically irreconcilable positions, the court has come up with a standard that is extremely difficult to apply and will therefore clog the courts with cases brought by prisoners, many having claims that at least colorably fall within the class reserved for judicial review.

The court's attempt to flesh out this standard doesn't help much. Thus, the court cautions that "unless a petitioner alleges the Commission acted beyond the scope of discretion granted by Congress, a federal court has no jurisdiction to entertain his claim." *Supra* p. 1551. Moreover, "a bare allegation that the Commission has abused *its discretion* acknowledges that the Commission has exercised a judgment, if improperly, within its discretion." *Id.* (emphasis original). This will surely deter prisoners from charging abuse of discretion. They will allege instead that the Commission acted "beyond the scope of [its] discretion."[4]

The majority explains what it means for the Commission to act beyond the scope of its discretion in the following terms:

> In determining whether the Commission has "gone outside" the Guidelines, therefore, it is appropriate for the court to inquire whether the Commission has in fact made a "judgment" within its discretion. Specifically, the court's inquiry is addressed to whether the Commission's decision involves the exercise of judgment among a range of possible choices or options, or involves a plain violation of a matter which does not admit of discretion and choice.

*Supra* p. 1552 (citation omitted). This gives litigants and the district courts little useful guidance. There are, it seems to me, few Parole Commission decisions that could not fairly be challenged on either ground.

Take this case, for example. The petitioner here was convicted of extortion, use of an explosive to commit a felony, and possession of an unregistered destructive device. Because the criminal conduct involved an airplane, the Commission classified his offense as "Interference With a Flight Crew." The regulations provide two levels of offense behavior in this category: "if the conduct or attempted conduct has potential for creating a significant safety risk to an aircraft or passengers, grade as Category Seven." 28 C.F.R. § 2.20.242(a). "Otherwise, grade as Category Two." *Id.* § 2.20.242(b). The Commission graded the offense as a seven.

Wallace's case gives rise to two possible objections to the Commission's action: first, that the Commission incorrectly classified his conduct as "Interference with a Flight Crew;" and second, that (even accepting the "Interference with a Flight Crew" classification) the Commission should have graded the offense as a two because "the conduct or attempted conduct [did not have] potential for creating a significant safety risk to an aircraft or passengers." In support of the first contention, Wallace argues that his offense should have been classified as extortion, a crime of which he was actually convicted, and which carries an offense behavior categorization of five. 28 C.F.R. § 2.20.322(a). Supporting the latter contention is the fact that the

---

4. Presumably, however, pro se prisoners will not be thrown out of court merely for invoking the wrong incantation. *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972).

explosives were found early, long before they could pose any realistic danger to the aircraft, passengers or crew and, in any case, were allegedly not even operative.

These two objections to the Parole Commission's action are quite different from each other. The first is, in effect, that the Commission misapplied its own guidelines, what I would have thought was a question of law, not of discretion. The second challenges judgments as well as findings of fact: the Commission's determination that Wallace's conduct endangered passengers, plane and crew. The court resolves both of these questions in a single paragraph:

> The Commission found that Wallace's offense had the potential to cause injury or death and destruction to an aircraft and passengers. The Commission's determination did not violate a mandatory or non-discretionary standard, but rather, involved a judgment among a range of possible choices and options relating to the severity of Wallace's offense. Wallace has pointed to no provision in the Guidelines removing discretion from the Commission to classify his offense in this category. We hold that the Commission acted within the scope of discretion granted by Congress and hence our review of the Commission's classification of Wallace's offense is complete.

*Supra* p. 1553 (footnote omitted).

The court does not adequately explain its conclusion. For example, even though Wallace was actually convicted of extortion, the court approves the Commission's decision to classify his offense as "Interference with Flight Crew." Was that because in doing so the Commission was acting within the scope of its discretion? Because the Commission did not abuse its discretion? Or because the Commission was right as a matter of law? Would the result have been the same if the Commission had classified the conduct as demand for ransom, 28 C.F.R. § 2.20.222; aircraft piracy, *id.* § .241; assault, *id.* § .212; burglary or unlawful entry, *id.* § .311; espionage, *id.* § .1021; or tax evasion, *id.* § .501? If review is to mean anything, I would think

that somewhere along the line the court will have to consider whether the Commission has totally misclassified the offense. Because the court does not tell us why it is satisfied with the classification here, those of us not participating in the majority opinion remain in the dark even as to the standard by which the conclusion was reached.

Equally unexplicated is the court's approval of the Commission's determination that "Wallace's offense had the potential to cause injury or death and destruction to an aircraft and passengers" because this "involved a judgment among a range of possible choices and options relating to the severity of Wallace's offense" and was therefore "within the scope of discretion granted by Congresss." *Supra* p. 1553. Would the court have reached the same conclusion if the Commission had uttered this finding as to a defendant convicted of an offense wholly unrelated to aircraft such as forgery, 28 C.F.R. § 2.20.331, or importation of illegal aliens, *id.* § 2.20.402? Or what if Wallace had merely written a letter or made a crank telephone call threatening the existence of a totally nonexistent bomb? Will all such matters be left to the Commission, and if so, what precisely is the area the court maps out for judicial scrutiny?

The summary fashion in which the court resolves Wallace's claims masks the difficulty of applying the standard enunciated today even to his case. I fear that courts will have even more trouble in future cases trying to apply the pronouncement of an en banc panel of this court. It seems to me we are inflicting another layer of complexity on district courts and litigants already overburdened with rules, tests, standards of review and a variety of other fine distinctions that are not intuitively obvious. Judges and lawyers will study today's opinion long and hard seeking guidance of the type that can actually be used in resolving disputes. As always, uncertainty will spawn litigation which will necessitate further guidance from this court. In the end, I fear that those who predicted section 4218(d) will mean nothing may have their way. When all is said and done, we may

find ourselves having run around the block once, only to wind up where we were before section 4218(d) was passed.

