**DEFENDERS OF WILDLIFE, Friends of Animals and Their Environment, and the Humane Society of the United States, Plaintiffs,**

v.

**Donald P. HODEL, as Secretary of the Interior, Defendant.**

**No. 3–86 CIV 757.**

United States District Court, D. Minnesota, Third Division.

Feb. 25, 1987.

44

Faegre & Benson by Brian B. O'Neill, Minneapolis, Minn., for plaintiffs.

U.S. Dept. of Justice by Lee M. Kolker, and Donald A. Carr, Washington, D.C., Agency for International Development by Mark Ward, Washington, D.C., and Jerome G. Arnold, U.S. Atty. by Mary E. Carlson, Asst. U.S. Atty., Minneapolis, Minn., for defendant.

## MEMORANDUM ORDER

ALSOP, Chief Judge.

This matter comes before the court on defendant Secretary of the Interior's motion to dismiss. In support of his motion, the Secretary argues that the court lacks jurisdiction because the issues raised by the plaintiffs are not justiciable. Specifically, the Secretary alleges that the plaintiffs' have not alleged the existence of a case or controversy and lack standing to bring this action.

## BACKGROUND

The underlying dispute presented by this case concerns the validity of the Secretary's action in rescinding a rule that re-

quired federal agencies to consult with the defendant when agency action abroad might affect species of wildlife or plants listed by the Secretary as endangered or threatened. In 1973, Congress enacted the Endangered Species Act (ESA), 16 U.S.C. § 1531 et. seq., to facilitate conservation of endangered and threatened species. Section 4 of the Act, 16 U.S.C. § 1533, requires the Secretary to list the species of wildlife and plants endangered or threatened with extinction. The list established by the Secretary contains both domestic and international wildlife and plants. *See* 50 C.F.R. § 17.11 (Oct.1985). Section 7(a)(2) of the Act, 16 U.S.C. § 1536(a)(2), imposes a duty on federal agencies to consult with the Secretary to insure that action authorized, funded, or carried out by federal agencies is "not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species...."

Initially the Secretary interpreted Section 7 as requiring consultation when federal agencies authorized, funded, or carried out projects in foreign countries.[1] 50 C.F.R. § 402.04 (Oct.1984). On June 3, 1986, the Secretary published a final rule that modified the scope of Section 7. The new rule rescinded the requirement for Section 7 consultation when agency action occurred in foreign countries. 51 Fed.Reg. 19930 (1986).

The plaintiffs argue that the reinterpretation of Section 7 through the 1986 rulemaking is invalid on its face as contrary to

the provisions of the ESA. The plaintiffs were unable to refer to any specific agency action in a foreign country initiated subsequent to the publication of the rule modifying the Secretary's interpretation of Section 7. Instead, the plaintiff directs the court's attention to several ongoing projects in foreign countries, all of which were initiated prior to the June 3, 1986, publication date.

### DISCUSSION

The issue raised by the defendant's motion concerns whether the plaintiffs' claims satisfy the "case and controversy" requirement of Article III Section 2 of the Constitution.[2] Article III limits the "judicial power" of federal courts to the resolution of "cases" and "controversies". *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471, 102 S.Ct. 752, 757, 70 L.Ed.2d 700 (1982). "The power to declare the rights of individuals and to measure the authority of governments ... 'is legitimate only in the last resort, and as a necessity in the determination of a real, earnest, and vital controversy.'" *Id.* (quoting *Chicago & Grand Truck Co. v. Wellman*, 143 U.S. 339, 345, 12 S.Ct. 400, 402, 36 L.Ed. 176 (1892)).

The aspect of the case and controversy requirement that is brought into focus by the instant motion is standing. The Supreme Court has recently clarified the "irreducible minimum" a plaintiff must show in order to satisfy the standing requirement of Article III in *Valley Forge.* A

---

1. The Secretary also requires Section 7 consultation when federal agencies authorize, fund, or carry out projects within the United States and on the high seas.

2. The defendant also raises prudential or policy limitations to asserting jurisdiction over the plaintiffs claims. Specifically, defendant argues that the court should decline to assert jurisdiction over the plaintiffs' claims because the plaintiffs' injuries do not fall within the zone of interest protected by the ESA, the plaintiffs are asserting generalized grievances, and plaintiffs are raising a third-person's legal rights. *See generally Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 475, 102 S.Ct. 752, 760, 70 L.Ed.2d 700 (1982). Because Congress has ex-

pressly augmented standing in the ESA, 16 U.S.C. § 1540(g), *see National Wildlife Federation v. Coleman*, 400 F.Supp. 705, 710 (D.Miss. 1975), *rev'd* on other grounds, 529 F.2d 359 (5th Cir.1976), *cert. denied*, 429 U.S. 979, 97 S.Ct. 489, 50 L.Ed.2d 587, the court lacks authority to create prudential barriers to standing in lawsuits brought to enjoin violations of the Act. *See, e.g., Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372, 102 S.Ct. 1114, 1120, 71 L.Ed.2d 214 (1982); *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 100, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979). Congress may not, however, abrogate the constitutional aspect of the standing requirement. *Gladstone Realtors,* 441 U.S. at 100, 99 S.Ct. at 1608.

plaintiff must "show that he personally has suffered some actual or threatened injury as a result of the punitively illegal conduct of the defendant, and that the injury can be fairly traced to the challenged action and is likely to be redressed by a favorable decision."[3]  454 U.S. at 472, 102 S.Ct. at 758 (citations omitted).  Relevant inquiries when determining standing in a particular case include:

> Is the injury too abstract or otherwise not appropriate, to be considered judicially cognizable?  Is the line of causation between the illegal conduct and injury too attenuated?  Is the prospect for obtaining relief from the injury as a result of a favorable ruling too speculative?

*Allen v. Wright,* 468 U.S. 737, 752, 104 S.Ct. 3315, 3325, 82 L.Ed.2d 556 (1984).

Relying on much of the above-cited authority, the Secretary argues that the plaintiff has failed to show an actual or threatened injury as the result of the Secretary's reinterpretation of Section 7.  The plaintiffs proffer two arguably separate and distinct sets of injuries,[4] neither of which, for reasons discussed below, is sufficient to satisfy the standing requirement of Article III.

■ The first of the plaintiffs' injuries is the only injury expressly stated in the plaintiffs' complaint.  For purposes of ruling on this motion to dismiss, the court must accept as true all material allegations in the complaint, and must construe the complaint in favor of the complaining party.  *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975).  In their complaint, plaintiffs state that members of their organization benefit both professionally and personally from observing endangered and threatened species of wild-

life and plants whose primary range are outside the United States.  Therefore, they argue, they have an interest in the enforcement and administration of the ESA. (Amended Complaint ¶ 2).

Although there is no precise definition of injury in fact, comparing the allegations in this complaint to those made in prior standing cases clearly demonstrates the insufficiency of the above-mentioned "injury".  *See, e.g., Allen v. Wright,* 468 U.S. 737, 754, 104 S.Ct. 3315, 3326, 82 L.Ed.2d 556 (1984) (Court has repeatedly held that an asserted right to have Government act in accordance with law is not sufficient to satisfy standing requirement); *Valley Forge,* 454 U.S. at 483–84, 102 S.Ct. at 764–65 (plaintiffs lacked standing to require that Government be administered according to law); *Sierra Club v. Morton,* 405 U.S. 727, 739, 92 S.Ct. 1361, 1368, 31 L.Ed.2d 636 (1972) (mere interest in the problem of environmental protection is insufficient to confer standing).  Ignoring the above-cited authority, plaintiffs have merely alleged an interest in the proper enforcement of the ESA to insure that endangered species are fully protected.  The amended complaint fails to allege any specific agency action in foreign countries that have adversely affected endangered species as the result of the Secretary's reinterpretation of Section 7.  Accordingly, the court concludes that the plaintiffs' interest in proper enforcement of the ESA, however admirable, is not a sufficient injury for purposes of Article III standing.

Apparently realizing the standing deficiencies in their complaint, plaintiffs have attempted to establish a record of additional injuries or set of injuries.[5]  In the memorandum in opposition to defendants motion,

---

**3.** In addition to the constitutional component, the standing doctrine embraces prudential considerations which were discussed in footnote 1.

**4.** In addition to their alleged injuries, plaintiffs offer several practical reasons why the court should hear this case.  First, plaintiffs emphasize that the issue raised by their complaint is one of law, and is appropriate for judicial resolution.  Second, because the scope of the lawsuit is purely legal, a factual record or factual setting is unnecessary.  Finally, the plaintiffs

have a strong and intense interest in protecting endangered species.  Even these practical considerations, standing alone or when combined, cannot overcome the requirements of Article III.

**5.** It is within the court's authority to allow the plaintiffs to supply, by amendment to the complaint or by affidavit, further particularized allegations deemed supportive of plaintiffs' standing.  *Warth,* 422 U.S. at 501, 95 S.Ct. at 2206.

plaintiffs list eight projects which they allege are ongoing projects in foreign countries that are harming endangered species. Of these eight, only three are ongoing projects that are actually being funded or carried out by federal agencies.[6] A fourth project, the Lower Mekong Project, is being planned by the Bureau of Reclamation. In addition to the above-mentioned projects, the plaintiffs direct the court's attention to a Bureau of Reclamation document detailing various projects in foreign countries that the Bureau is involved in. The Bureau's involvement in most of these projects is limited to studying, planning, or technical advice.

The plaintiffs note that under the new regulation the federal agencies involved in the above-cited ongoing and planned projects no longer have a continuing duty to consult with the Secretary. Consequently, the plaintiffs argue that these projects provide a sufficient actual or threatened injury to satisfy the standing requirement of Article III, Section 2.[7]

Plaintiffs rely on *Tennessee Valley Authority v. Hill*, 437 U.S. 153, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978), in support of their argument that federal agencies have a continuing duty to consult with the Secretary during the pendency of foreign projects. In *Tennessee Valley Authority*, plaintiffs sought to enjoin the completion of the Tellico Dam claiming that such action would violate the ESA by causing the snail darters extinction. The consultation aspect of Section 7 was not the focus of the litigation. The Tennessee Valley Authority (TVA) consulted with the Secretary, and the Secretary clearly stated that completion of the dam would result in total destruction of the snail darters critical habitat. *Id.* at 161–62, 98 S.Ct. at 2285. It was TVA's

position, however, that the ESA did not apply to the dam because the project was initiated before the ESA became effective and Congress continued to appropriate funds to the dam following the effective date of the ESA despite their knowledge that the dam would affect the snail darters existence. The Court enjoined the completion of the dam holding that TVA's Section 7 duty to insure that actions authorized, funded, or carried out by them do not jeopardize the continued existence of endangered species or result in the destruction or modification of habitat of such species applied to the Tellico Dam.

Contrary to the plaintiffs' assertion otherwise, *Tennessee Valley Authority* stands for the proposition that federal agencies have a continuing duty during the pendency of a project to insure that the project does not jeopardize endangered species. The parties did not raise and the court did not address the issue of continuing consultation.

■ For reasons discussed below, neither the ongoing projects or the projects detailed in the Bureau of Reclamation document, provide a sufficient basis for showing an actual or threatened injury traceable to the Secretary's reinterpretation of Section 7. First, there is no indication that the projects summarized in the Bureau of Reclamation document will affect endangered or threatened species of wildlife or plants, or, as to most of the projects, when they would begin. Second, it is entirely possible that Section 7 consultation has occurred at the initial or latter stages of both the ongoing and planned projects.[8] After consulting with the Secretary, the final decision of whether to proceed or continue with a

---

**6.** The Nam Choan Dam and the Temenggor Dam projects were funded by the World Bank, which is not a federal agency. The Tembeling River Dam Project has been halted. The Itaipu Dam was completed in 1983.

**7.** The plaintiffs do not clearly articulate how the failure to consult with the Secretary during the pendency of these projects injures them. Presumably, the absence of consultation during the pendency of these projects raises a potential for harm to endangered species because the agen-

cies are unaware of or insensitive to the environmental effects of their actions.

**8.** This possibility is enhanced by the information that the Agency for International Development funded the preparation of environmental assessments for both the Mahaweli River Basin Project and the Picchis-Palchazu Forestry Project which lead to alternative or additional action to minimize or eliminate the effect on endangered species. (Cohen affidavit at 2–3).

project lies with the acting agency. *National Wildlife Federation v. Coleman*, 529 F.2d 359 (5th Cir.1976); *Sierra Club v. Froehlke*, 534 F.2d 1289 (8th Cir.1976). Consequently, additional consultation, absent changed circumstances, would be meaningless.

Third, even assuming for purposes of this motion that, in addition to the initial Section 7 consultation, federal agencies have a duty to consult with the Secretary during the pendency of agency action in a foreign country, plaintiffs have not sought to enjoin the agency action that they contend is allegedly causing them harm. (The Mahaweli Project is allegedly harming leopards and elephants; the Picchis-Palcazu Project is allegedly harming jaguars and marmusets; the Aswan Dam Project is allegedly harming the Nile crocodile). Instead, the plaintiffs would have the court construe the ESA in the abstract. The court believes, however, that limited judicial resources counsel against deciding cases when the plaintiff has failed to request a remedy that will redress the injury the plaintiff is relying on to show standing. If after accepting jurisdiction and determining that the Secretary's reinterpretation of Section 7 was invalid the Secretary and the relevant federal agencies did not voluntarily initiate consultation regarding the Mahaweli, Picchis-Palcazu, and Aswan Dam projects, the plaintiffs would have to bring a second lawsuit to enjoin the agency action as it relates to those particular projects. The plaintiff is not required, of course, to correct all alleged violations of the ESA in one lawsuit. But requesting a remedy that alleviates at least some of the plaintiffs' alleged harm is a more efficient use of judicial resource and is part of the purpose underlying the standing requirement. *See Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 79, 98 S.Ct. 2620, 2633, 57 L.Ed.2d 595 (1978) (standing requires that plaintiffs alleged injuries that are likely to be redressed by the requested relief). Accordingly, the court concludes that the plaintiffs have failed to satisfy the standing requirement of Article III, Section 2.

Based upon the record as presently constituted,

IT IS ORDERED That defendant's motion to dismiss is granted and that plaintiffs' action shall be dismissed for lack of standing.