Faegre & Benson by Brian B. O'Neill, Alan M. Anderson, and Richard A. Duncan, Minneapolis, Minn., for plaintiffs.

U.S. Dept. of Justice by Lee M. Kolker, Washington, D.C., for defendant.

**DEFENDERS OF THE WILDLIFE, Friends of Animals and Their Environment, and The Humane Society of the United States, Plaintiffs,**

**v.**

**Donald P. HODEL, as Secretary of the Interior, Defendant.**

**No. 3–86 CIV 757.**

United States District Court, D. Minnesota, Third Division.

Feb. 15, 1989.

## ORDER

ALSOP, District Judge.

### I. BACKGROUND.

Plaintiffs ("Defenders") filed this action on August 27, 1986. The complaint challenged the defendant's issuance of Regulations in 1986 which limited the "consultation provision" [1] of the Endangered Species Act [2] ("ESA") to those actions occurring in the United States or on the high seas. Previously, 50 C.F.R. § 402.02 had stated that consultation was required for any agency action, foreign or domestic. On February 25, 1987, this court, 658 F.Supp. 43, dismissed Defenders' action on the grounds that it had no subject matter jurisdiction because the plaintiffs lacked standing. The Eighth Circuit Court of Appeals, 851 F.2d 1035, reversed that order on July

---

**1.** 16 U.S.C. § 1536(a)(2).

**2.** 16 U.S.C. §§ 1531–1543 (1982).

8, 1988. The Secretary petitioned the Eighth Circuit for a rehearing and rehearing *en banc,* which petition was denied, and the case has been remanded to this court for further proceedings.

The parties come before the court now on cross motions for summary judgment. The court is asked to make two decisions at the present time. First, the Secretary asks the court to re-examine the issue of plaintiffs' standing. He argues that the standing determination reached by the Eighth Circuit was made in the context of a motion to dismiss, where all factual allegations were construed in a light favorable to plaintiffs. Now, a "new level" of litigation has been reached. The present motion is in the context of summary judgment. At this stage, the plaintiffs must prove their standing without the benefit of any inferences in their favor. The Secretary argues that the depositions taken of the plaintiffs prove that no member of the plaintiff groups will be injured by the new regulations, therefore, they have no standing. Plaintiffs, on the other hand, argue that they do have standing and that the opinion of the Eighth Circuit confirms that fact.

The second issue for determination is whether the 1986 regulations are invalid because they contradict the Endangered Species Act.[3] The 1986 regulations define an agency "action" so that federal agency action in foreign countries is no longer subject to the consultation requirements found in section 1536. Defenders argues that the ESA is clear in that the consultation requirements found at section 1536 apply to federal agency action throughout the world. Consequently, any regulations which stray from the statute's mandate are invalid.

## II. STANDARD FOR SUMMARY JUDGMENT.

The Supreme Court has stated that summary judgment is a tool to isolate and dispose of claims or defenses which are either factually unsupported or which are based on undisputed facts. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Hegg v. United States,* 817 F.2d 1328, 1331 (8th Cir.1987). Summary judgment is proper, however, only if examination of the evidence in a light most favorable to the non-moving party reveals no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The test for whether there is a genuine issue over a material fact is two-fold. First, the materiality of a fact is determined from the substantive law governing the claim. Only disputes over facts that might affect the outcome of the suit are relevant on summary judgment. *Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. at 2512; *St. Amant v. Benoit,* 806 F.2d 1294, 1297 (5th Cir.1987). Second, any dispute over material fact must be "genuine." A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. at 2512. It is the non-moving party's burden to demonstrate that there is evidence to support each essential element of his claim. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553.

Any discovery in this case pertaining to the present motions has been completed. Defenders' motion is a question of statutory interpretation and a matter of law for the court to decide. As to the facts regarding standing, although the parties have different interpretations regarding the facts, there is no dispute as to what those facts are. Summary judgment is, therefore, appropriate at this time.

## III. STANDING MOTION.

As stated above, the Secretary argues that at this stage of the proceedings the plaintiffs bear a greater burden in proving standing than they did in the motion to dismiss, and have failed to carry that burden. Although the court appreciates the

---

**3.** Plaintiffs have also moved for summary judgment on the grounds that the Secretary's decision was arbitrary and capricious. That issue will not be discussed due to the disposition of plaintiffs' first cause of action.

distinction urged by the Secretary, it feels that the Eighth Circuit has already determined the standing question in this case. The new "proof" and arguments offered by the Secretary do not vary the situation enough to merit an analysis differing from that given by the Eighth Circuit. The court will, therefore, deny the Secretary's motion for summary judgment.

## IV. ENDANGERED SPECIES ACT DISCUSSION.

The consultation provision states that: Each federal agency shall, in consultation with and with the assistance of the Secretary, ensure that any action authorized, funded, or carried out by such agency ... is not likely to jeopardize the continued existence of any endangered species or threatened species ...

16 U.S.C. § 1536(a)(2) (1982).

The Secretary argues that the 1986 regulations are perfectly consistent with this language. He also argues that the 1986 definition of "action" is supported by the presumption against the extraterritorial application of United States statutes,[4] congressional and agency comments regarding the proper scope of the provision, and the fact that other statutes and other sections of the ESA more specifically deal with the international endangered species problem.

The Secretary's strongest argument is that statutes are presumed to have domestic scope only. This presumption of domestic application finds expression most clearly in an environmental case in *United States v. Mitchell*, 553 F.2d 996 (5th Cir.1977). That case stands for the proposition that if

environmental legislation is to be applied outside the boundaries of the United States, Congress' intent that the legislation be applied to that extent must be clearly expressed. One of the teachings of *Mitchell* is that the use of all-inclusive language, by itself, is not enough to provide that specific and clear direction. *Id.* at 1003.

The starting point for any question of statutory interpretation must be the words of the statute itself. If the language of the statute is plain and clear, that language is ordinarily regarded as conclusive. *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 570, 102 S.Ct. 3245, 3249, 73 L.Ed.2d 973 (1982); *Sierra Club v. Clark*, 755 F.2d 608, 613 (8th Cir.1985). The other methods of statutory interpretation come into play only if the statute itself is ambiguous. They are not used to cast doubt on the meaning of a statute which is clear on its face.[5]

The court finds that the ESA plainly states that federal agencies are required to consult with the Secretary regarding projects in foreign countries. Congress' clear intent that this is so can, for the most part, be determined without resort to legislative history. Section 1536 clearly states that each federal agency must consult with the Secretary regarding any action which could jeopardize any endangered or threatened species. The language and mandate is all inclusive; it could not be more broad. Consultation must occur whenever an action endangers *any endangered species.* Endangered species exist outside the boundaries of the United States and high seas,[6] therefore, consultation must occur if

---

**4.** The court assumes that the consultation provision can be classified as a statute with extraterritorial reach. Defenders has argued that it is merely a statute involving United States agencies spending United States money. *Plaintiffs' Reply Memorandum* at 3, n. 4. Because this difference in terminology does not control the outcome, the court expresses no opinion in regard to the technical "categorization" of the statute.

**5.** Both parties have cited comments in support of their position uttered by various committees or agencies from periods before and after the ESA was passed. The court tends to the view that "[t]he fact of the matter is that legislative

history can be cited to support almost any proposition, and frequently is." *Wallace v. Christensen*, 802 F.2d 1539, 1559 (9th Cir.1986) (Kozinski, J., concurring). For the most part, the statements cited by the parties prove only that there was a difference of opinion among the various government branches and agencies. The court is of the impression that such comments reflect individual opinion and agency infighting more than anything else, and accords very little weight to such comments cited by either side.

**6.** Although the court has not counted numbers, Defenders stated that 493 of the 883 species

an action in a foreign land affects an endangered or threatened species there.[7]

The court has made this determination well aware of the *Mitchell* holding that congressional intent to apply a statute extraterritorially must go beyond the use of inclusive language. The court finds that additional intent in several places. First, Congress' concern with the international aspects of the endangered species problem is unmistakable and appears repeatedly throughout the statute. Section 1531 states that the United States has pledged itself to conserve, to the extent practicable, wildlife throughout the world. Section 1532(6) defines "endangered species" without regard to their presence in the United States. Section 1537 specifically deals with "international cooperation" regarding endangered species, and section 1538(a) prohibits various actions, wherever occurring, by anyone subject to the jurisdiction of the United States. Section 1538 also shows that Congress knew that not *all* portions of the ESA were to apply worldwide. Where they did not want the prohibitions to have effect outside the United States, inclusive language was not used. Section 1536's all-inclusive language, when contrasted with the discriminatory language of section 1538, cannot be considered sloppiness on the part of Congress but, rather, intentional language expressing a concern that the consultation provisions be given effect wherever agency action took place.

In addition to this "general" international concerns of the statute noted above, section 1533 requires the Secretary to list all species that are determined to be endangered or threatened. That section clearly states that the actions of *foreign nations* are to be considered in determining which species to list, and many species not native

to or present in the United States appear on the list. *See* 50 C.F.R. Part 17. This broad definition of "endangered species," combined with the general international concern of the entire ESA, must be considered in interpreting the consultation requirements of section 1536.

Finally, the court finds Congressional intent to apply the statute extraterritorially in the interplay between the statute and federal regulations which occurred during the 1978 amendments to section 1536. This interplay is the one piece of legislative history helpful to the resolution of the present controversy.

To gain perspective on the 1978 amendment, it is necessary to step back. The original ESA was passed in 1973. As a response to this, the Secretary of the Interior initiated a rule-making process to fully implement the Act. The consultation provision of section 7 (section 1536) was subject to considerable discussion and the Secretary published final rules for this provision on January 4, 1978. The final rules stated that section 7 required every federal agency to ensure that its actions *in foreign countries*, as well as in the United States, did not jeopardize the continued existence of any endangered species. 50 C.F.R. § 402.02, 43 Fed.Reg. 870, 874 (1978). After these regulations were issued, Congress amended section 1536. The new statutory language is the present version of section 1536 and was basically a reorganization which allowed additions to the rest of the section. The conference report on the 1978 amendments explained the new version of section 7(a) as follows:

> The conferees adopted Senate language creating a new section 7(a) which essentially restates section 7 of existing law,

---

listed as endangered in 1986 had their primary range outside the United States.

**7.** By coming to this conclusion, the court expresses no views as to the "best" or most diplomatic way of dealing with the preservation of endangered species in other countries, or how international relations regarding this issue should be structured. There are no doubt several ways these objectives could be realized, as evidenced by the beliefs of the Secretary and other individuals that the 1986 regulations best

balance all concerns presented by this problem. However, in section 1536, Congress has declared one way all federal agencies must respond to the problem. That congressional mandate cannot be subverted by the Secretary's redefinition of what "action" means. Congress required that consultation be given regarding actions in foreign countries. If that requirement is to be changed, it must be changed by Congress, not the Secretary.

and outlines the responsibilities of the Secretary and other Federal agencies for protecting endangered species.... The conferees felt that the Senate provision by retaining existing law was preferable, since regulations governing section 7 are now familiar to most Federal agencies and have received substantial judicial interpretation.

H.R.Rep. No. 1804, 95th Cong., 2d Sess. 18 (1978), U.S.Code Cong. & Admin. News 1978, pp. 9453, 9486.

This language constitutes the conference committee's "stamp of approval" of existing law and regulations governing section 7. As noted above, the regulations published ten months earlier requiring consultation for agency actions in foreign countries were part of that existing law.

The government argues that the language of the report and the "familiarity" with regulations it refers to relate to the case of *T.V.A. v. Hill,* 437 U.S. 153, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978), and the activity regarding the snail darter controversy. While the hearings did focus on that topic, one cannot ignore the three-year process of interpreting the scope of the consultation provision and final rules issued in January, 1978. These regulations were part of the "existing law" and "regulations governing section 7" so as to be included in the retention of existing law.

The conference committee's "stamp of approval" of the worldwide scope of section 7, in addition to the all-inclusive language of the statute and the international concerns expressed throughout the ESA, leaves the court with the belief that the intent of Congress is clear. Congress intended that section 1536's consultation requirements were to apply to all actions, including those in foreign countries.

It follows from this finding that the 1986 regulations promulgated by the Secretary of Interior which limited the application of the ESA to those activities occurring within the United States or on the high seas are contrary to the ESA. Summary judgment will be granted in favor of Defenders on that basis.

Accordingly,

IT IS ORDERED That:

1. Defendant's motion for summary judgment is DENIED;

2. Plaintiffs' motion for summary judgment is GRANTED; and

3. The Clerk shall enter judgment as follows:

IT IS ORDERED, ADJUDGED AND DECREED That the Secretary of Interior shall:

1. Revoke and rescind so much of 50 C.F.R. Part 402 (1987) as limits the consultation requirement of section 7 of the Endangered Species Act, 16 U.S. C. § 1536, to federal agency action that may affect endangered or threatened species in the United States or on the high seas;

2. Publish, within thirty (30) days of the lifting of any stay of execution of this judgment, proposed regulations clearly recognizing the full mandate of section 7 of the Endangered Species Act, expressly and affirmatively requiring that each federal agency consult with the defendant Secretary with respect to any agency action that may affect any endangered or threatened species, wherever found;

3. Publish, within sixty (60) days of the lifting of any stay of execution of this judgment, final regulations clearly recognizing the full mandate of section 7 of the Endangered Species Act, expressly and affirmatively requiring that each federal agency consult with the defendant Secretary with respect to any agency action that may affect any endangered or threatened species, wherever found.

4. Execution of this judgment shall be stayed for sixty (60) days or during the course of any appeal.