**ARIZONA DEPARTMENT OF ECONOMIC SECURITY, Petitioner,**

v.

**U.S. DEPT. OF LABOR, Respondent.**

**No. 85–7043.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 13, 1986.

Decided May 28, 1986.

Charles G. Preston, Washington, D.C., for petitioner.

Jeffrey A. Hennemuth, Patrick D. Gilfillan, Office of Solicitor, Dept. of Labor, Washington, D.C., for respondent.

Before CHAMBERS, KENNEDY, and FARRIS, Circuit Judges.

FARRIS, Circuit Judge:

In a decision dated October 22, 1984, an administrative law judge upheld disallowances of $26,555.70 of costs incurred by subgrantees or subcontractors who had received money from the Arizona Department of Economic Security under the Comprehensive Employment and Training Act of 1973.[1] That decision became the decision of the Secretary 20 days later, and the Department of Economic Security was ordered to pay the $26,555.70 to the Department of Labor. DES timely appealed. On appeal, DES questions the proper interpretation of CETA Section 106(b).

The issues are whether Section 106(b) requires the Secretary of Labor to complete all administrative proceedings (an investigation, an ALJ hearing with briefs, an appeal to and decision by the Secretary, and the issuance of a final order) within 120 days after *any* representative of the Secretary has "reason to believe" a violation of the Act or its regulations has occurred; and whether the Secretary has authority to review costs allowed by prime sponsors.

We hold that the 120 day period was triggered when the Secretary, through his delegate, the local grant officer, received the final audit report, and that the Secretary has the authority to review costs allowed by prime sponsors such as DES.

The facts are not in dispute. From April 1, 1978 through September 30, 1980, DES, as a prime sponsor, received CETA grants totalling $80,935,107. Of $80,419,925 in costs, 90 percent were incurred by subgrantees or subcontractors under various CETA titles. DES audited each of these subgrantees in accordance with 20 C.F.R. § 676.83 to determine whether CETA compliance standards were met. DES allowed the costs and no appeal was taken to the grant officer under 20 C.F.R. § 676.86.

In 1981, a firm of certified public accountants audited DES on behalf of the DOL with respect to the $80,419,925. An exit conference between the auditors and DES officials was held on June 4, 1981, and at some time prior to August 13, 1981, an audit report was sent to the DOL's Office of the Inspector General. The grant officer in the DOL received a final audit report from the OIG on November 19, 1981. On November 20, 1981, the grant officer sent a copy of the report to DES for review and comment pursuant to 20 C.F.R. § 676.86(d).

---

1. Comprehensive Employment and Training Act of 1973, Pub.L. No. 93–203, 87 Stat. 839, *amended by* Pub.L. No. 95–524, 92 Stat. 1909 (1978), *repealed by* Job Training Partnership Act of 1982, Pub.L. No. 97–300, 29 U.S.C. §§ 1501–

1781. Provisions of the Job Training Act do not affect administrative or judicial proceedings commenced under CETA before September 30, 1984. Pub.L. No. 97–300, § 181, 96 Stat. 1354, 29 U.S.C. § 1591(e).

The grant officer issued an initial determination on February 5, 1982 disallowing $2,851,598 in costs questioned by the auditors. On March 19, 1982, 120 days after receiving the final audit report, the grant officer issued a "final determination" disallowing $575,029 in costs and requiring DES to repay $528,202 ($45,827 had already been returned). The ALJ upheld the grant officer's disallowance to the extent of $26,555.70.

### Standard of Review

Although we review the construction of a statute *de novo*, *United States v. Louisiana Pacific Corp.*, 754 F.2d 1445, 1447 (9th Cir.1985), we give great deference to the interpretation given by the agency charged with administering the statute. *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). In addition, an agency's interpretation of its own regulations is "of controlling weight unless it is plainly erroneous or inconsistent with the regulation." *United States v. Larionoff*, 431 U.S. 864, 872, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48 (1977) (quoting *Bowles v. Seminole Rock and Sand Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945)).

### Section 106(b) of CETA

Section 106(b) of CETA provides:

Whenever the Secretary receives a complaint ..., or whenever the Secretary has reason to believe (because of an audit, ... or otherwise) that a recipient of financial assistance under this Act is failing to comply with the requirements of this Act, ... the Secretary shall investigate the matter. The Secretary shall conduct such investigation, and make the final determination required by the following sentence regarding the truth of the allegation or belief involved, not later than 120 days after receiving the complaint. If, after such investigation, the Secretary determines that there is substantial evidence to support such allegation or belief that such recipient is failing to comply with such requirements, the Secretary shall, after due notice and opportunity for a hearing to such recipient, determine whether such allegation or belief is true.

DES argues that the "plain meaning" of the statute requires the 120 days to begin running once any representative of the Secretary has reason to know of a violation, and requires the Secretary to complete all administrative proceedings within 120 days of receiving the complaint or audit. Specifically, DES argues that the Secretary must issue a final order, appealable to the court of appeals, within 120 days after the Office of the Inspector General receives the audit report. Consequently, DES argues, the Secretary lacked jurisdiction to make the decision and to enter the order now under review.

The threshold question is which of the two determinations found in the "following sentence" is the "final determination" of which the statute speaks? Is the "final determination" the finding that the allegation or belief of a violation is supported by substantial evidence, or is it the finding, after notice and hearing, that the allegation or belief is true?

"When aid to the construction of the meaning of words, as used in the statute, is available, there certainly can be no 'rule of law' which forbids its use, however clear the words may appear on 'superficial examination.'" *Train v. Colorado Public Interest Research Group, Inc.*, 426 U.S. 1, 10, 96 S.Ct. 1938, 1942, 48 L.Ed.2d 434 (1976) (quoting *United States v. American Trucking Associations*, 310 U.S. 534, 543–44, 60 S.Ct. 1059, 1064, 84 L.Ed. 1345 (1940)). The legislative history is ambiguous. Therefore, we look to the Secretary's interpretation found in the regulations. *See Udall*, 380 U.S. at 16, 85 S.Ct. at 801; *Kunaknana v. Clark*, 742 F.2d 1145, 1150 (9th Cir.1984).

■ The regulatory scheme envisioned by the DOL provides for the enforcement of CETA requirements by the local grant officer, not the Office of the Inspector General. 20 C.F.R. § 676.86. *See generally* 20 C.F.R. Part 676, Subpart F (Complaints,

Investigations and Sanctions). Under the regulations, the 120 day period does not begin until the grant officer receives the final audit report. 20 C.F.R. § 676.86(d) and (e). Although the Inspector General must review and approve the audit report before sending it to the grant officer, he does so independently, not as the Secretary's delegate. *See* Inspector General Act of 1978, Pub.L. No. 95–452, 92 Stat. 1101, *reprinted as amended in* 5 U.S.C.App. at 987–93, §§ 2 and 3. We hold that the 120 day period began when the grant officer received the final audit report.

Section 106(b) requires the Secretary, through his delegate, to make a "final determination" within 120 days. The 120 day period cannot reasonably encompass the entire administrative process, in view of the time utilized in meeting the notice requirements of the statute, the regulations, and the Administrative Procedure Act, 5 U.S.C. § 551 *et seq. See* 20 C.F.R. §§ 676.-88, .89, .90, .91, and .92. Since the burden of proving the allowability of costs initially disallowed by the Department falls on the audited grant recipients, 20 C.F.R. § 676.-90(b), a requirement that the entire administrative process be completed within 120 days would severely limit the period in which an audited recipient could gather information to refute the Department's disallowances.

Our reasoning is supported by 20 C.F.R. § 676.88(e), which provides that the grant officer's final determination must (1) indicate that efforts to resolve the matters in dispute have been unsuccessful, (2) list those matters upon which the parties disagree, (3) list any sanctions and corrective action to be taken, and (4) *inform the parties of their opportunity to request a hearing pursuant to the regulations* (emphasis added). In promulgating this regulation, the Department did not contemplate that the hearing would also be conducted within those 120 days. Our reading of the statute and its implementing regulations is

reinforced by precedent, common sense, and the policy of ensuring an adequate hearing in a meaningful time and manner. *Cf. Cleveland Board of Education v. Loudermill,* —— U.S. ——, 105 S.Ct. 1487, 1496, 84 L.Ed.2d 494 (1985). We do not reach the question of whether the 120 day period is jurisdictional since the grant officer issued his final determination within 120 days.[2]

### *The Secretary's Authority to Review*

■ DES argues that the Secretary had no authority to review the disallowed costs, because CETA § 106(a) and 20 C.F.R. §§ 676.83 and 676.86 delegate that authority to prime sponsors. DES argues that the Secretary has only appellate jurisdiction over local administrative remedies. There is no support for the argument that the Secretary has abdicated his authority to act by granting prime sponsors the authority to supervise subgrantees. *See, e.g., San Diego Regional Employment and Training Consortium v. Department of Labor,* 713 F.2d 1441, 1444 (9th Cir.1983). The Secretary must retain the ability to investigate and determine whether prime sponsors are efficiently, effectively, and appropriately carrying out the purpose of the program. Furthermore, Subsections (b) through (g) of Section 106 explicitly charge the Secretary with ultimate responsibility for the administration of the grievance procedure, and the Secretary has by regulation reserved the right to conduct CETA investigations on his own initiative, 20 C.F.R. § 676.81(b).

The Secretary issued a final determination within 120 days after receiving the final audit report. The disallowance of costs is

AFFIRMED.

---

**2.** On November 4, 1985, the Supreme Court granted certiorari in *Brock v. Pierce County,* 759 F.2d 1398 (9th Cir.) *cert. granted,* —— U.S. ——, 106 S.Ct. 308, 88 L.Ed.2d 285 (1985) in which this court held that the 120 day period is jurisdictional. Whether the 120 day period is jurisdictional does not affect the outcome of this case.