815 F.2d 549
 55 USLW 2607, 17 Soc.Sec.Rep.Ser. 304,
Medicare&Medicaid Gu 36,266
 STATE OF WASHINGTON, DEPARTMENT OF SOCIAL AND HEALTH
SERVICES, Petitioner,
Irene Purser and Betty Butterworth, Intervenors,
v.
Otis BOWEN, Secretary of Health and Human Services, Respondent.
 No. 86-7188.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 6, 1987.
Decided April 20, 1987.
 
 Sara J. Finlay, Olympia, Wash., for petitioner.
 Barbara A. Isenhour and Peter Greenfield, Seattle, Wash., for intervenors.
 Charles Pinnell, Patrick E. McBride, and William J. McIntyre, Seattle, Wash., for respondent.
 M. Margaret McKeown and David J. Burman, Seattle, Wash., and Evelyn R. Frank, Oakland, Cal., for amici curiae.
 Petition for Review of a Decision of the Department of Health and Human Services.
 Before WRIGHT, FARRIS and BEEZER, Circuit Judges.
 FARRIS, Circuit Judge:
 
 
 1
 The State of Washington appeals from a final decision of the Secretary of Health and Human Services disapproving a Medicaid plan amendment submitted by the State. In the plan amendment, the State sought authorization to begin calculating the eligibility of married Medicaid applicants for benefits under state community property law instead of under the Secretary's "name-on-the-check" rule. The State argues that the Secretary's decision to require the State to continue using the "name-on-the-check" rule, in spite of the rule's inconsistency with state community property law, was arbitrary and capricious, an abuse of discretion, and a violation of section 2373(c) of the Deficit Reduction Act of 1984. We agree.
 
 BACKGROUND
 
 2
 The Medicaid program, established in 1965 as Title XIX of the Social Security Act, 42 U.S.C. Secs. 1396-1396q, as amended, is a cooperative federal-state program designed to "provid[e] federal financial assistance to States that choose to reimburse certain costs of medical treatment for needy persons." Harris v. McRae, 448 U.S. 297, 301, 100 S.Ct. 2671, 2680, 65 L.Ed.2d 784 (1980). States participating in the program must develop Medicaid plans that contain "reasonable standards" for determining Medicaid eligibility. 42 U.S.C. Sec. 1396a(a)(17). These plans must comply with the Medicaid statute, Medicaid regulations, and the Secretary's own administrative rules. The Medicaid program is the primary source of public assistance for elderly persons living in nursing homes. General Accounting Office, Medicaid and Nursing Home Care: Report to the Subcomm. on Health and the Environment of the House Comm. on Energy and Commerce, 98th Cong., 1st Sess. 1 (1983).
 
 
 3
 One of the Secretary's administrative rules is commonly referred to as the "name-on-the-check" rule. It requires that a Medicaid applicant's eligibility for benefits be based on the amount of money that the applicant receives each month in his or her name. The rule does not consider what portion of a married applicant's monthly receipts belongs to the applicant's spouse under state community property law.
 
 
 4
 In a community property state such as Washington, the "name-on-the-check" rule affects the at-home spouse of an institutionalized Medicaid recipient differently depending on the at-home spouse's gender. This is because most elderly couples receive the greater part of their community income in the husband's name. See generally U.S. Bureau of the Census, Current Population Rep., Ser. P-60, No. 146, Table 37 (1985) (in the United States in 1983, the median income of men over 65 was $9,766; the median income of women over 65 was $5,599); id. at Table 50 (in the United States in 1983, 42.7% of men over 65 received pensions or annuity income; 20.4% of women over 65 received such income).
 
 
 5
 Consider an elderly couple that receives $1,000 per month in the husband's name, and $500 per month in the wife's name. If the wife enters a nursing home, the "name-on-the-check" rule requires that her Medicaid eligibility be based on the $500 per month received in her name. This allows her husband full use of the remaining $1,000 of monthly income. If, on the other hand, the husband enters a nursing home, the rule requires that his Medicaid eligibility be based on the $1,000 per month received in his name. This leaves his wife with only $500 of usable monthly income. Even though under state community property law both spouses have monthly incomes of $750, the "name-on-the-check" rule puts the husband whose wife enters a nursing home in a much better position than the wife whose husband does so.
 
 
 6
 In December 1984, the State submitted Medicaid Plan Amendment No. 84-20 for the Secretary's approval. The State proposed to begin calculating the eligibility of married applicants for benefits under state community property law instead of under the "name-on-the-check" rule. On behalf of the Secretary, the Administrator of the Health Care Financing Administration issued a final decision disapproving the plan amendment on January 31, 1986. The State filed a timely notice of appeal. Appellate jurisdiction is based on 42 U.S.C. Secs. 1316(a)(3)-(5).
 
 DISCUSSION
 
 7
 We will set aside the Secretary's decision if it was arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law. Cubanski v. Heckler, 781 F.2d 1421, 1423-24 (9th Cir.1986), cert. granted sub nom. Bowen v. Kizer, --- U.S. ----, 107 S.Ct. 1282, 94 L.Ed.2d 141 (1987). We consider this question in the specific context of Washington community property law, recognizing that in Washington the amount of money that a married Medicaid applicant receives in his or her name is generally not coextensive with the applicant's personal income.
 
 
 8
 The "name-on-the-check" rule has no explicit basis in either the Medicaid statute or Medicaid regulations. Instead, the rule represents the Secretary's administrative interpretation of Medicaid regulation 42 C.F.R. Sec. 435.723. Section 435.723 provides, in pertinent part:
 
 
 9
 (b) The agency must consider income ... of spouses living in the same household as available to each other, whether or not [it is] actually contributed.
 
 
 10
 (c) If both spouses apply or are eligible as aged, blind, or disabled [persons] and cease to live together, the agency must consider their income ... as available to each other for the time periods specified below. After the appropriate time period, the agency must consider only the income ... that [is] actually contributed by one spouse to the other.
 
 
 11
 (1) If spouses cease to live together because of the institutionalization of one spouse--
 
 
 12
 (i) The agency must consider their income as available to each other through the month in which they cease to live together. Mutual consideration of income ceases with the month after the month in which separation occurs....
 
 
 13
 (d) If only one spouse in a couple applies or is eligible, or both spouses apply and [they] are not eligible as a couple, and they cease to live together, the agency must consider only the income ... of the ineligible spouse that [is] actually contributed to the eligible spouse beginning with the month after the month in which they cease to live together.
 
 
 14
 42 C.F.R. Secs. 435.723(b)-(d). Thus, when a married couple lives together, and one of the spouses applies for Medicaid benefits, the income of the applicant's spouse is deemed "available" to the applicant whether or not it is actually contributed. 42 C.F.R. Sec. 435.723(b). If the applicant enters a nursing home, the spouse's income continues to be deemed "available" during the first month of separation. 42 C.F.R. Sec. 435.723(c)(1)(i). Thereafter, mutual consideration of spousal income ceases unless the spouse's income is actually contributed. 42 C.F.R. Secs. 435.723(c)(1)(i), 435.723(d).
 
 
 15
 The Secretary interprets section 435.723 to mean that all money received in a married applicant's name is "income" attributable to the applicant even if (1) the applicant has been in a nursing home for over a month, and (2) a portion of the applicant's monthly receipts belongs to the applicant's spouse under community property law. The Secretary reads the regulation's references to "income" as referring both to the applicant's income and to income of the applicant's spouse that is "available" because received in the applicant's name. The State interprets the same references as denoting only those payments or other benefits that the applicant is legally entitled to under applicable property law. "Available income," the State argues, is a subcategory of "income," not a larger category encompassing both the applicant's income and income of the applicant's spouse received in the applicant's name.
 
 
 16
 The Secretary's interpretation is entitled to deference. First, the Secretary is the official responsible for administering the Medicaid program. See Connecticut Dept. of Income Maintenance v. Heckler, 471 U.S. 524, 530 n. 16, 105 S.Ct. 2210, 2214 n. 16, 85 L.Ed.2d 577 (1985); Schweiker v. Hogan, 457 U.S. 569, 588, 102 S.Ct. 2597, 2608, 73 L.Ed.2d 227 (1982). Second, the Medicaid statute vests the Secretary with authority to prescribe regulations defining Medicaid eligibility standards. 42 U.S.C. Sec. 1396a(a)(17)(B). See Herweg v. Ray, 455 U.S. 265, 274-75, 102 S.Ct. 1059, 1066, 71 L.Ed.2d 137 (1982). Under these circumstances, the Secretary's interpretation of his own regulation is ordinarily of controlling weight. Arizona Dept. of Economic Sec. v. U.S. Dept. of Labor, 790 F.2d 782, 784 (9th Cir.1986). At the same time, "[b]ecause the Secretary's interpretations of [his] regulations are without force of law, ... we must consider them with caution." Vista Hill Found., Inc. v. Heckler, 767 F.2d 556, 559-60 (9th Cir.1985). We will not defer to the Secretary's interpretation if it conflicts with the Medicaid statute or Medicaid regulations. Id. at 560. See Arizona Dept. of Economic Sec., 790 F.2d at 784.
 
 
 17
 The State's interpretation is also entitled to some deference. The Medicaid statute grants states freedom to devise their own "reasonable standards ... for determining [Medicaid] eligibility." 42 U.S.C. Sec. 1396a(a)(17). See Schweiker v. Gray Panthers, 453 U.S. 34, 36, 101 S.Ct. 2633, 2636, 69 L.Ed.2d 460 (1981). The Medicaid program, moreover, is a cooperative, federal-state program. See Harris, 448 U.S. at 308, 100 S.Ct. at 2683; Medicaid and Nursing Home Care at i ("[T]he Federal and State Governments share the responsibility for insuring that Medicaid provides adequate and efficient nursing home care to the people who need it but cannot pay for it."). We will accord some deference to the State's interpretation in this context. See Dawson v. Myers, 622 F.2d 1304, 1307 (9th Cir.1980), vacated on other grounds sub nom. Beltran v. Myers, 451 U.S. 625, 101 S.Ct. 1961, 68 L.Ed.2d 495 (1981).
 
 
 18
 Because the "name-on-the-check" rule has no explicit statutory or regulatory basis, we evaluate its reasonableness as applied to a community property state such as Washington in terms of: (1) the language of section 435.723; (2) the language of the Medicaid statute; (3) the moratorium provision contained in section 2373(c) of the Deficit Reduction Act of 1984; and (4) preemption considerations.
 
 1. Section 435.723
 
 19
 The Secretary contends that the term "available," as used in section 435.723, expands the scope of a married applicant's "income" to include income belonging to the applicant's spouse under state community property law that is received in the applicant's name after the spouses have been separated for over a month. The Secretary's contention is unsupported. As used in public assistance statutes, the term "available" typically functions as a restrictive term defining a subcategory of "income." See, e.g., Heckler v. Turner, 470 U.S. 184, 200, 105 S.Ct. 1138, 1147, 83 L.Ed.2d 138 (1985); Gray Panthers, 453 U.S. at 48, 101 S.Ct. at 2642; Schrader v. Idaho Dept. of Health and Welfare, 768 F.2d 1107, 1110 (9th Cir.1985); Young v. Schweiker, 680 F.2d 680, 682 (9th Cir.1982). The legislative history of the Medicaid statute also indicates that "available" should be read as a limiting term. The Senate report accompanying the Medicaid legislation provided:
 
 
 20
 States [are required] to take into account only such income and resources as ... are actually available to the applicant or recipient.... States [are] not [to] assume the availability of income which may not, in fact, be available or overevaluate income and resources which are available.
 
 
 21
 S.Rep. No. 404, 89th Cong., 1st Sess. 78 (1965), reprinted in 1965 U.S. Code Cong. & Ad. News pp. 1943, 2018.
 
 
 22
 The Secretary's interpretation of "income" is also unsupported. The Secretary's interpretation is contrary to the principle that, as used in federal statutes or regulations, the term should be defined under state law. See United States v. Mitchell, 403 U.S. 190, 197, 91 S.Ct. 1763, 1768, 29 L.Ed.2d 406 (1971) ("In the determination of ownership [of income], state law controls."); Poe v. Seaborn, 282 U.S. 101, 109-10, 51 S.Ct. 58, 75 L.Ed. 239 (1930) (the term "income of" in a federal tax statute indicates ownership as defined under state law). Cf. United States v. Overman, 424 F.2d 1142, 1144 (9th Cir.1970) (the terms "property" and "rights to property" in a federal tax statute should be defined under state law). Moreover, the Secretary's interpretation is inconsistent with the Social Security Administration's definition of "income" in the Supplemental Security Income (SSI) program. See Social Security Administration, Program Operations Manual System, "Determining Ownership of Income," SI 00810.130 (1984) ("[T]he individual who has title to the proceeds of a payment ... is the one to whom any resulting income must be charged.") (emphasis added).
 
 
 23
 Most importantly, the Secretary's interpretation defeats the purpose of subsections (c)(1)(i) and (d) of the regulation because it permits "deeming" of spousal income to continue after an institutionalized married applicant has been separated from his or her spouse for over a month. "Deeming" occurs whenever "a portion of the spouse's income is [deemed] 'available' to the applicant." Herweg, 455 U.S. at 267, 102 S.Ct. at 1062. Subsections (c)(1)(i) and (d) are designed to limit spousal financial responsibility by putting a time limit on "deeming," id. at 269-70, 102 S.Ct. at 1063, thereby preventing "the economic strain that institutionalization [would] cause to the spouse who remain[ed] at home" if the "deeming" period were unlimited. Franssen v. Juras, 406 F.Supp. 1375, 1378 (D.Or.1975). See generally S.Rep. No. 404, 89th Cong., 1st Sess. 78 (1965), reprinted in 1965 U.S.Code Cong. & Admin. News 2018 ("The [Senate Finance] Committee has heard of hardships on certain individuals [caused] by requiring them to provide support and to pay for the medical care needed by relatives."); Deford, The Medicaid Deeming Procedure: The Intolerable Financial Burden on the Non-Institutionalized Spouse, 10 Clearinghouse Rev. 12 (1976). As applied to a community property state such as Washington, the "name-on-the-check" rule allows "deeming" to continue unchecked, in effect if not in name, after a married Medicaid applicant has been in a nursing home for over a month.
 
 2. The Medicaid Statute
 
 24
 The Secretary argues that requiring states that participate in the Medicaid program to uniformly observe the "name-on-the-check" rule is consistent with the "same methodology" provision contained in section 1396a(a)(10)(C)(i)(III) of the Medicaid statute. The "same methodology" provision, however, "simply instructs States to treat components of income-- e.g., interest or court-ordered support payments--similarly for both medically and categorically needy persons." Atkins v. Rivera, --- U.S. ----, 106 S.Ct. 2456, 2462, 91 L.Ed.2d 131 (1986). See H.R.Rep. No. 92-231, 92d Cong., 1st Sess. 4, reprinted in 1972 U.S.Code Cong. & Admin.News pp. 4989, 4992. It cannot reasonably be construed to require the entire Medicaid program, a cooperative federal-state venture, to match the uniformity standards of the "comparable," but purely federal, SSI program. In any case, the statute and regulations of the SSI program do not expressly define the terms "income" and "available," nor do they mention the "name-on-the-check" rule. See 42 U.S.C. Secs. 1381-1383; 20 C.F.R. Secs. 416.101.2227.
 
 
 25
 Section 1396a(a)(17)(B) of the Medicaid statute envisions that each state that participates in the Medicaid program will develop its own "reasonable standards ... for determining eligibility." 42 U.S.C. Sec. 1396a(a)(17)(B) (emphasis added). This language evinces Congress' intent to "confer[ ] broad discretion on the States to adopt standards for determining the extent of medical assistance, requiring only that such standards be 'reasonable' and 'consistent with the objectives' of the Act." Beal v. Doe, 432 U.S. 438, 444, 97 S.Ct. 2366, 2370, 53 L.Ed.2d 464 (1977). See also 42 U.S.C. Sec. 1396 (The purpose of the Medicaid program is to "enabl[e] each State, as far as practicable under the conditions of such State, to furnish[ ] medical assistance.") (emphasis added).
 
 3. The Deficit Reduction Act of 1984
 
 26
 In section 2373(c) of the Deficit Reduction Act of 1984, Congress barred the Secretary from disapproving, during a specified moratorium period, any state Medicaid plan "on account of such plan's having a standard or methodology which the Secretary interprets as being less restrictive" than the Secretary's methodology. Pub.L. 98-369, Title III, Sec. 2373(c), July 18, 1984, 98 Stat. 1112. A plan is less restrictive if it results in the institutionalized spouse receiving more Medicaid benefits than he or she would receive under the Secretary's methodology.
 
 
 27
 The moratorium period went into effect on July 18, 1984, and was scheduled to end 18 months after the Secretary submitted a report to Congress concerning the appropriateness of applying to Medicaid methodologies used in cash assistance programs. Id. In response to an inquiry by this court, the Secretary acknowledged that the requisite report has not yet been submitted. We therefore conclude that the moratorium was in effect when the Secretary disapproved the State's plan amendment on January 31, 1986.
 
 
 28
 We have held that the Secretary's disapproval of a less restrictive state plan amendment during the moratorium period violates section 2373(c). Cubanski, 781 F.2d at 1430. We therefore must consider whether the State's plan amendment was less restrictive. If the institutionalized spouse received the larger monthly check, the plan amendment would be less restrictive, because unlike the "name-on-the-check" rule, the plan amendment would transfer a part of the check to the at-home spouse. This would result in a corresponding increase in the institutionalized spouse's Medicaid benefits. On the other hand, if the at-home spouse received the larger monthly check, the plan amendment would appear to be more restrictive, because it would appear to require, again unlike the "name-on-the-check" rule, that some of the at-home spouse's monthly receipts be transferred to the institutionalized spouse. This would reduce the institutionalized spouse's benefits correspondingly.
 
 
 29
 A recent Washington law has eliminated the plan amendment's potentially more restrictive aspect. The new law provides that whenever the community income received in the name of the at-home spouse is greater than the community income received in the name of the institutionalized spouse, the institutionalized spouse's interest in the excess must not be considered for purposes of computing his or her Medicaid eligibility. Washington Laws of 1986, ch. 220. The State's plan amendment is therefore less restrictive. The Secretary's decision to disapprove it violated section 2373(c). See Cubanski, 781 F.2d at 1430.
 
 4. Preemption Considerations
 
 30
 The Secretary argues that, to the extent the "name-on-the-check" rule conflicts with the State's community property law, the rule preempts Washington law. State family property law cannot be preempted by federal law, however, unless "Congress has 'positively required [preemption] by direct enactment.' " Hisquierdo v. Hisquierdo, 439 U.S. 572, 581, 99 S.Ct. 802, 808, 59 L.Ed.2d 1 (1979) (quoting Wetmore v. Markoe, 196 U.S. 68, 77, 25 S.Ct. 172, 175, 49 L.Ed. 390 (1904)). The preemption standard applied in this context is a stringent one: "State family and family-property law must do 'major damage' to 'clear and substantial' federal interests before the Supremacy Clause will demand that state law be overridden." Id. (quoting United States v. Yazell, 382 U.S. 341, 352, 86 S.Ct. 500, 506, 15 L.Ed.2d 404 (1966)).
 
 
 31
 The Medicaid statute does not expressly provide for the preemption of state family property law. Nor would the State's plan amendment do "major damage" to "clear and substantial" federal interests. The Secretary's contention that there is a compelling federal interest in the Medicaid program's being a unified national program based on uniform eligibility standards must be heard against the background of express language in the Medicaid statute providing that states should have flexibility in operating their Medicaid programs. See 42 U.S.C. Secs. 1396, 1396a(a)(17). See also Medicaid and Nursing Home Care at 6 ("[Medicaid] is a program characterized by State diversity and independence in determining eligibility, services provided, and reimbursement levels.").
 
 
 32
 The Medicaid program exemplifies what is often referred to as "cooperative federalism." See Harris, 448 U.S. at 308, 100 S.Ct. at 2683. In programs of this sort, "[w]here coordinated state and federal efforts exist within a complementary administrative framework, and in the pursuit of common purposes, the case for federal preemption becomes a less persuasive one." New York Dept. of Social Services v. Dublino, 413 U.S. 405, 421, 93 S.Ct. 2507, 2516, 37 L.Ed.2d 688 (1973). There is also a presumption that Congress will not interfere with state family property law. Operating Engineers v. Zamborsky, 650 F.2d 196, 199 (9th Cir.1981). As we have stated, "[f]amily and property law for good reason are the province of state law." Hutcheson v. Califano, 638 F.2d 96, 99 (9th Cir.1981).
 
 CONCLUSION
 
 33
 The "name-on-the-check" rule, as applied to Washington, is inconsistent with the language of section 435.723 and with relevant language contained in the Medicaid statute. Section 435.723 is not "reasonably susceptible to the construction placed upon [it] by the Secretary." Pacific Coast Med. Enterprises v. Harris, 633 F.2d 123, 131 (9th Cir.1980). The Secretary's decision to disapprove the State's plan amendment was therefore arbitrary, capricious, and an abuse of discretion. See Arizona Dept. of Econ. Security, 790 F.2d at 784. Further, the Secretary's decision violated the moratorium provision contained in section 2373(c) of the Deficit Reduction Act of 1984, and was consequently not in accordance with law. Cubanski, 781 F.2d at 1424. We reject the Secretary's claim that the State's community property law is preempted by federal law.
 
 
 34
 REVERSED.